WALBRIDGE, APPELLANT, *v.* THE TOLEDO TRUST CO., TRUSTEE, APPELLEE.

BENTLEY, APPELLANT, *v.* THE TOLEDO TRUST CO., TRUSTEE, APPELLEE.

WALBRIDGE, APPELLANT, *v.* THE TOLEDO TRUST CO., TRUSTEE, APPELLEE.

(Decided November 6, 1939.)

*Messrs. Brown & Sanger,* for appellants.

*Messrs. Marshall, Melhorn, Davies, Wall & Bloch,* for appellee.

*Mr. J. I. O'Connor,* guardian *ad litem,* for wards.

OVERMYER, J. The three above captioned causes were filed in the Common Pleas Court by the appellants as plaintiffs in the order indicated, and, each plaintiff seeking the same relief on the same evidence, they were, on hearing, consolidated for purposes of trial, but separate decrees were entered. They have been presented in this court on separate appeals, but were argued and submitted together and what is said herein applies to each and all of them.

In the Common Pleas Court a decree was entered in each case against the plaintiff and in favor of the defendant trustee, and the causes are submitted on appeal on questions of law and fact in this court upon the evidence submitted in the Common Pleas Court, the transcript of docket and journal entries, the arguments and briefs of counsel.

The plaintiffs in their respective petitions alleged that each was the donor under separate written trust

indentures, of which the defendant, The Toledo Trust Company, is now trustee, each trust consisting of certain securities. It is alleged that in the years 1935 and 1936 certain securities were sold from the corpus of the trusts at a large profit, by a predecessor trustee, and that each plaintiff had made demand upon the present trustee, defendant herein, that it pay over to plaintiffs as distributees, out of the assets of the trust estates, the profits of such sales or the proceeds thereof, which the trustee failed and refused to do. The prayer is for an accounting and an order requiring the trustee to pay over to the respective plaintiffs the sum so realized as profits from the sales of the securities.

The trustee filed answers and cross-petitions alleging in substance, that, by the terms of the respective trust indentures, profits or gains realized from the sales of securities became a part of the corpus or principal of the trust estates, and not income; that by the terms of the trust indentures the plaintiffs were entitled only to the income from the trusts during their lives; that the trusts were and are by their very terms irrevocable and were not subject to alteration, control or revocation by the plaintiffs as donors; and that the ultimate beneficiaries of the trusts (the children of plaintiffs and grandchildren of the original donor of the trust securities) each had acquired a vested and non-disturbable interest in the trusts' corpus, precluding the allowance of plaintiffs' demands.

A further defense was made by the trustee that at the time of the appointment by the Common Pleas Court of this county of the present trustee, The Toledo Trust Company, the trustee filed an action in that court for instructions and a construction of the trust indentures, making all interested persons parties, and that in that cause and court a decision and judgment was entered on December 30, 1936, from which no

appeal was prosecuted, finding the trust instruments to be irrevocable and conferring only a life interest in the income from the trust corpus upon the plaintiffs, and that such finding and judgment is *res judicata* upon the questions here raised and dispositive of the issues here sought to be made.

Briefly, the undisputed facts are as follows:

In 1924 Mrs. Elizabeth Cummings Walbridge, who had theretofore inherited a valuable estate from her father, desired to distribute some of the securities of her estate to her three children, who are the appellants herein, and her grandchildren. Accordingly, with the acquiescence and approval of plaintiffs, she transferred to them in substantially equal portions the securities referred to, placing them into the custody of her husband, then living, now deceased. The plan she proposed, which was agreed to by the plaintiffs, contemplated the creation by these plaintiffs of three separate trusts, by the terms of which each of the plaintiffs should receive the net income for life from the securities so transferred, and upon the death of each plaintiff the net income was to be paid to the mother, if still surviving; if not, or upon her death, the life income was to be paid one-half to the surviving spouse of the plaintiff and one-half to the children of that plaintiff. Upon the death of a surviving spouse of the plaintiff, the entire income was to be paid to the children of such plaintiff until they reached certain specified ages, when the trust should terminate and the entire corpus of the trust should be distributed (*per stirpes*) to the children of plaintiff.

In conformity with the plan and with the full cooperation and approval of all parties, three separate trust instruments were created by plaintiffs herein as of June 14, 1926, and at the same time a fourth trust instrument was created by Mrs. Walbridge, containing substantially the same terms, reserving to herself the life income, with the corpus ultimately distributable to

all her grandchildren (children of plaintiffs) *per stirpes.* The securities constituting the corpus of each trust were thereupon delivered to the trustee (predecessor of the defendant) by the husband of Mrs. Walbridge, the father of plaintiffs, who had held them in custody since 1924.

The two questions presented are as follows; viż:

1.  Are the plaintiffs entitled to the profits resulting from the sales of the securities referred to, by the trustee, under the terms of the trust indentures executed by them?

2.  Is the finding and judgment of the Court of Common Pleas entered December 30, 1936, *res judicata* on the construction and interpretation of the trust indentures on the issues here made?

The paragraph, identical in each agreement, which it is claimed requires interpretation and construction by the court, is paragraph 12, which provides as follows:

"In consideration of the trustee accepting and assuming the trusts herein created, upon the terms and conditions, and under the reservations and limitations, hereinbefore and hereinafter contained, *the transfer and delivery of securities concurrently herewith made, and the trusts herein created, are hereby made irrevocable.* The donor, however, during his lifetime, may create liens against said trust estate, and in case any such liens are in existence at the time of his death, the same shall be discharged by the application thereto of sufficient proceeds from the sale of such part thereof as may be necessary to pay the same, if there be not sufficient funds for that purpose in donor's estate, or by such sale, if the liens are unsatisfied at the time of their maturity and such lienholders demand of trustee such sale. *The donor, during his lifetime, may also direct any change he desires in the beneficiaries hereof and hereunder, or in their respective shares, or the time and manner of payment thereof.*" (Italics ours.)

It is proper also to note paragraph 13(*d*) of each agreement executed by plaintiffs, giving the trustee power, among other things "to determine, within reasonable limits of discretion, whether money or property coming into its hands hereunder shall be treated as principal or income, except that stock dividends and *profits from sales,* shall be treated as principal." (Italics ours.)

The foregoing sections were the ones interpreted and construed by the Court of Common Pleas in 1936 by a finding and judgment which stands unreversed and unmodified.

As heretofore stated, in 1935 and 1936, the then trustee sold a number of securities from the corpus of each trust, under authority of paragraph 13(*d*) of the trust indentures quoted above, realizing very substantial profits. It is these profits which are now being demanded by plaintiffs. This court has examined the trust agreements and given full consideration to the arguments advanced and is unable to find any basis for a claim of ambiguity in the interpretation and construction of paragraph 12, or any other provision of the trust agreements. The whole plan, originated in the mind of Mrs. Walbridge, the real original donor, and concurred in by the family, was clearly a family arrangement for the ultimate benefit of Mrs. Walbridge's grandchildren, granting to her children, the plaintiffs, only the net income during their lives. When paragraph 12 is considered in connection with all facts and circumstances surrounding the entire transaction, it is apparent that there was thereby conferred upon the respective plaintiffs by the last sentence of paragraph 12 no more than a special appointive power, to be exercised only for the benefit of the ultimate beneficiaries, that is, the grandchildren. It is further apparent that by the specific terms of the respective trust agreements the trusts established were and are irrevocable, and therefore the donor-

plaintiffs lack the power to recapture the principal or corpus of the trusts, or any part thereof, for their own use. The plaintiffs were and are in fact only the nominal donors of the trusts; they never had possession of the securities involved; they were given no title-interest in the securities and no control over the corpus or the distribution of the corpus of the trust estates. It is obvious that they can not repossess themselves of, nor give away to others, something which they themselves never possessed.

It was undoubtedly the consideration above suggested, and others, that moved the Common Pleas Court in December, 1936, in the suit hereinbefore referred to, to hold that the trusts here involved are irrevocable; that the donors had no right or power to revoke, recapture, alter, amend, or change the corpus of the trusts or the course of its distribution, and to hold that the last sentence of paragraph 12 of the trust agreements, the only phrase which could be claimed to be somewhat ambiguous, should be construed to read as follows:

"The donor during his lifetime may also direct any change he desires in the beneficiaries hereof and hereunder *as to such portion of the income of said trust estate to which the donor may by the terms hereof be entitled during his lifetime or the time and manner of payment of said income so payable to said donor.*" (The italicization indicates interpretation of court.)

It is the view of this court, as it was also of the court below in the present suits, that the above is a correct interpretation and construction of the sentence referred to, and we reach that conclusion from a consideration of the express words of the trust agreements, the purpose and plan of all the parties to them when considered as a general family plan, the very apparent plan of the original donor and the plaintiffs as nominal donors to hold the corpus of the trusts, viz.: the securities, securely intact and conserved for

the use of the original donor's grandchildren, the plaintiffs' children, and the dealings with respect to the trusts between the donors and the trustee in all the intervening years since their creation.

The intention on the part of Mrs. Walbridge and the donor-plaintiffs to conserve the corpus or principal of the trusts for the grandchildren is clearly shown by the fact that in the agreements there is no provision for any discretion on the part of plaintiffs to invade the principal or corpus of the trusts, and the fact that distribution of principal is mentioned only in connection with its division among the grandchildren as they reach certain ages. In no instance are the plaintiffs named other than as income beneficiaries throughout the agreement, and it is apparent that if these donors had intended to reserve the power or authority to withdraw principal, the various provisions found therein as to the management and administration of the trust properties reserved by the donors would have been wholly unnecessary.

A careful analysis of the last sentence of paragraph 12 seems to bring a conclusive answer to the claim of its ambiguity. It provides:

"The donor, during his lifetime, may also direct any change he desires in the *beneficiaries hereof and hereunder,* or in their respective shares, or the time and manner of payment thereof." (Italics ours.)

Who are the "beneficiaries hereof and hereunder"? The only beneficiaries "hereof and hereunder" are the donor's mother, wife, children and their spouses and donor's heirs at law. Every one else, including the donor, is excluded because they are not "beneficiaries hereof and hereunder" and it is apparent that the power to make changes other than among his family was intentionally, and very specifically, withheld.

In what has been said on the merits, it was not possible to discuss within the reasonable limits of a memo-

randum all the points made in the elaborate and helpful briefs of counsel, nor to cite and discuss the authorities. An effort has been made to point out the compelling considerations leading the court to its conclusions.

The decree entered in Common Pleas Court on December 30, 1936, heretofore referred to herein, was the result of actions brought by the present plaintiffs seeking the appointment of defendant, appellee herein, as successor trustee of the trusts here involved. Defendant, now trustee, filed answers in those suits setting forth its willingness to serve as trustee but, expressing uncertainty as to its powers, duties and obligations under paragraph 12 of the trust agreements, it asked the court to construe that paragraph. On December 30, 1936, the court appointed defendant as successor trustee in each case, and entered a decree construing paragraph 12 in its entirety "as though said paragraph 12 contained the following language," to wit:

"12. In consideration of the trustee accepting and assuming the trusts herein created, upon the terms and conditions, and under the reservations and limitations, hereinbefore and hereinafter contained, the transfer and delivery of securities concurrently herewith made, and the trusts herein created, are hereby made irrevocable. The donor, however, during his lifetime, may create liens against that portion of the income from said trust estate to which said donor, during his lifetime, may be entitled, and in case any such liens are in existence at the time of his death, the same shall be discharged by the application thereto of any portion of the accumulated income due him at the time of donor's death, if there be not sufficient funds for that purpose in donor's estate. The donor, during his lifetime may also direct any change he desires in the beneficiaries hereof and hereunder, as to such portion of the income from said trust estate to which the donor

may by the terms hereof, be entitled, during his lifetime, or the time and manner of payment of said income so payable to said donor.''

The plaintiffs herein and the then trustee were parties to those proceedings, and no appeal having been prosecuted therefrom in any of the cases, the decrees fixed and settled the rights of these plaintiffs upon the matters litigated from the time of the execution of the trust agreements to the final termination of them by their terms. The court entering the decrees was one of competent jurisdiction, and its judgments can not be collaterally attacked nor again litigated on the matters between the parties by it decided and determined.

Specifically, we hold that the decree of the Court of Common Pleas of December 30, 1936, was a construction and interpretation of paragraph 12 and not an alteration or amendment or reformation of it; that the decrees then entered relate back to the date of the execution of the trust agreements; that the court entering the decrees had jurisdiction of the subject matter of the actions; that all necessary parties were before the court, and that the relief sought was within the power of a court of equity to grant.

The finding is for defendant on all questions presented, and a decree will be so entered.

*Decree accordingly.*

CARPENTER and LLOYD, JJ., concur.