Taft, J.
 

 In 1945, the General Assembly appropriated $350,000 to the Department of Public Works for construction of certain tunnels.
 

 On August 1, 1946, respondent, as Director of the Department of Public Works and acting on behalf of the state, entered into a written contract with relator under the terms of which relator was employed by the state to perform certain services with respect to the construction of the foregoing tunnels.
 

 The controversy between relator and respondent involves the amount to which relator is entitled by reason of work done pursuant to this contract.
 

 The pertinent provisions of the contract, relating to compensation, read:
 

 “VI
 

 “The state of Ohio agrees to pay the party of the second part as full compensation for his services as aforesaid, and any and all expenses incurred by said party of the second part in performing said services, an amount equal to six (6%) per cent of the amount paid out by the state of Ohio under and on account of contracts entered into by the state for the construction of said improvement. When labor or material is furnished by the state of Ohio, the actual cost to the state of Ohio shall be taken as the basis for com
 
 *547
 
 puting the party of the second part’s compensation. The party of the second part’s compensation will he paid hy vouchers issued in his favor by the state architect and engineer, and such compensation shall become due and payable in the following order: One and one-half
 
 (V/2%)
 
 per cent when the preliminary plans have been completed and approved by the Department of Public Works and the board or officer having charge of the institution at which the improvement is to be made; a further three (3%) per cent
 
 when
 
 plans, specifications, bills of material and
 
 estimates of cost have been completed
 
 in readiness for contractors, and accepted and approved by the Department of Public Works; and a further one and one-half (1%%) per cent in installments as the work progresses, based on payments made to contractors. Such
 
 payments
 
 shall be
 
 based in
 
 the
 
 first instance on the estimated cost,
 
 and are to be treated as installment payments on the
 
 entire fee based upon the actual cost.”
 
 (Emphasis added.)
 

 Delator completed preliminary plans and those plans were approved by the Department of Public Works in January 1947.
 

 Under the terms of the contract, relator was to do nothing further until an order was received from the Department of Public Works to prepare working plans. In May 1948, before any such order to proceed had been given, relator was notified by the director of public works that the construction of the tunnels was suspended and relator would be required to do no further work under the contract.
 

 Delator was paid the sum of $4,929.58. However, relator contends that it is entitled to payment of $5,064.77 in addition to that amount. This claim of relator is based upon the contention that, under the foregoing-quoted portion of paragraph VI of the contract, relator was entitled to the 1%% installment of
 
 *548
 
 his compensation which was to “become due and payable * * * when the preliminary plans have been completed and approved,” and that such installment was to be 1%% of the estimated cost of $666,290 which was submitted by relator with the preliminary plans. In support of this contention, relator relies upon that portion of the above-quoted provisions from paragraph VI of the contract reading: “Such payments shall be based in the first instance on the estimated cost * *
 

 The real problem in this case arises in the interpretation of the words “estimated cost” found in that portion of the contract.
 

 In looking over the whole contract, it appears that those words are referred to in other portions only in the following language:
 

 “The state of Ohio does * * * hereby employ the party of the second part for the rendition to it * * * of the following services with respect to said improvement, to wit:
 

 “I
 

 “ (1) To prepare plans, specifications, bills of material, and
 
 estimates of cost.
 

 “The preparation of plans shall consist of first preparing and submitting to the Department of Public Works, preliminary studies before making general working drawings, which preliminary studies shall be accompanied by a
 
 general approximate of the cost.
 
 Thereafter, upon receiving an order to do so from the Department of Public Works, the party of the second part shall prepare full and accurate plans * * *; accurate bills showing the exact quantities of different kinds of materials necessary to the making of said improvement ; definite and complete specifications *
 
 * *;
 
 a full and accurate
 
 estimate of
 
 each item of expense and of
 
 the aggregate cost
 
 of the improvement; and such
 
 *549
 
 further data as may be required by the Department ■of Public Works.” (Emphasis added.)
 

 The “full and accurate estimate * * * of the aggregate cost of the improvement” was obviously not to be prepared until after an order from the Department of Public Works to “prepare full and accurate plans” and such estimate. It is conceded that no such order was ever given. However, relator contends that the “general approximate of the cost,” which was to .accompany and did accompany the “preliminary studies,” would also be included within the description of “estimated cost” as found in the quoted portion from paragraph VI of the contract.
 

 It may be noted that the words “estimates of cost,” found in subparagraph (1) of the portion of the contract quoted with reference to the services to be performed, obviously refer to the “full and accurate estimate of each item of expense and of the aggregate ■cost of the improvement. ’ ’
 

 For the purposes of this opinion, we will assume, without deciding, that it would be reasonable to interpret the words “estimated cost,” found in paragraph VI of the contract, so as to include the “approximate ■of the cost” as well as the “estimates of cost” and “estimate * * * 0f * * * cost” found in paragraph I. ■On the other hand, we are of the opinion that it would be reasonable to interpret the words ‘ ‘ estimated cost, ’ ’ found in paragraph VI, as not including the ‘ ‘ approximate of the cost,” to the extent that such approximate •exceeded the amount appropriated by the General Assembly to cover the cost of the project.
 

 The whole of the sentence in paragraph VI relied upon by relator reads:
 

 “Such payments shall be based in the first instance on the estimated cost, and are to be treated as installment payments on the entire fee based upon the actual ■cost.”
 

 
 *550
 
 This language clearly indicates that the percentages, to be paid relator as compensation, are to be ultimately based “upon the actual cost.” Relator at all times knew that there could not be an actual cost in excess of the amount appropriated for the project by the General Assembly. Section 17, General Code. The General Assembly never did appropriate an amount for the project in excess of $350,000. To base the
 
 V/zV0
 
 first installment on an estimated cost in excess of the actual cost, which the director was authorized to expend, would be to anticipate a grant, which was never made, of further authority from the General Assembly to the Department of Public Works.
 

 It is not necessary for this court to determine which of the two foregoing reasonable interpretations of the words “estimated cost,” found in paragraph VI of the contract, should be adopted, because, in the instant case, the parties, by their own acts and conduct, have shown the sense in which these words “estimated cost” were used and understood by them. It is sufficient to recognize that the words ‘ ‘ estimated cost ’ ’ are susceptible of more than one reasonable interpretation. By their acts and conduct, the parties have indicated that those words were used and understood by them as not including any “general approximate of the cost,” accompanying the preliminary studies, to the extent that such approximate exceeded the amount appropriated by the General Assembly to cover the cost of the project.
 

 Prior to the time that relator was notified that the construction of the tunnels was suspended, relator was presented with a voucher for $4,429.58 to cover his compensation for the first 1%% installment provided for in the contract. On January 20, 1947, relator returned this voucher to the Department of Public Works with the following letter:
 

 “Enclosed is voucher No. 1 in the amount of $4,429.58
 
 *551
 
 covering engineering fee for preliminary plans on the above job. I do not concur in the computation upon which the amount shown on the voucher is based. Our contract calls for a total engineering fee of
 
 6%
 
 of the estimated cost of construction. One fourth of this total fee is earned upon completion of preliminary plans. The appropriated estimated cost of construction upon which the engineering fee should be based is $328,638.50. The total engineering fee is, therefore, $19,718.31, and one-fourth of same is $4,929.58.
 

 “The discrepancy appears to arise because of the method used in inserting the sum of $2,000 (for underground exploration to locate unknown existing structures) into the original breakdown of the appropriation.
 

 “I would suggest that the encumbrance for engineering fees be corrected and a new voucher prepared. If this matter cannot be handled expeditiously at this time I have signed the present voucher with the understanding that it is a partial payment only and will be adjusted later. I prefer, however, that this voucher be discarded, the encumbrance corrected, and a new voucher in the correct amount prepared.”
 

 It may be noted that the $328,638.50, which relator described in his letter as “the appropriated estimated cost of construction upon which the engineering fee should be based,” was arrived at by deducting from the $350,000, appropriated by the General Assembly, the estimated amount ($19,718.31) which, would be due relator upon completion of the contract and the state architect’s fee ($1,643.19).
 

 The director of public works accepted the computation set forth in the foregoing letter from the relator; and payment was thereafter made to relator of the amount of $4,929.58 which he claimed was due to him. Relator made no claim that he was entitled to any greater sum for the first 1%% installment provided
 
 *552
 
 for in the contract until after he had been notified that the construction of the tunnels was suspended and that he would be required to do no further work under the contract. That was more than a year after the payment to and receipt by him of the $4,929.58, which the foregoing letter recognized as the first 1%% installment due him under the contract.
 

 Where, after consideration of all the provisions of a contract and of the limitations on the contracting authority of the representative who negotiated and executed the contract for one of the parties thereto which limitations were well known by the other party, words used in a contract are reasonably susceptible of more than one interpretation and the parties to such contract have by their acts and conduct in the performance of the contract over a reasonable period of time mutually adopted one of those interpretations,, the interpretation so adopted will be given to those-words.
 
 Courtright
 
 v.
 
 Scrimger,
 
 110 Ohio St., 547, 144 N. E., 294. See
 
 State, ex rel. Weinberger, a Taxpayer,
 
 v.
 
 Miller,
 
 87 Ohio St., 12, 33, 99 N. E., 1078, 44 L. R. A. (N. S.), 712, Ann. Cas. 1913E, 761; 9 Ohio Jurisprudence, 424, Section 196.
 

 It follows that the writ requested must be denied.
 

 Writ denied.
 

 Wetgandt, C. J., Matthias, Hart, Zimmerman, Stewart and Turner, JJ., concur.