**WOOSTER RUBBER CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 11255.

United States Court of Appeals
Sixth Circuit.

June 8, 1951.

John C. Johnston, Jr., Wooster, Ohio (Critchfield, Critchfield & Critchfield, Robert Critchfield and John C. Johnston, Jr., all of Wooster, Ohio, on the brief), for petitioner.

Francis W. Sams, Washington, D. C. (Theron Lamar Caudle, Ellis N. Slack, and Francis W. Sams, all of Washington, D. C., on the brief), for respondent.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

The petitioner seeks review of the decision of the Tax Court adjudging deficiencies in excess profits tax of the corporation for the fiscal years ended September 30, 1944, and 1945, in the amounts of $19,201.96 and $21,117.62 respectively.

The issue presented is the extent of the deductibility of contributions made by petitioner to a profit-sharing trust during the years 1944 and 1945. The Tax Court decided that the amounts paid by petitioner to the profit-sharing trust exceeded the amounts called for by the instrument creating the plan, and that amounts so paid were not deductible under Section 23(p) (1) (C) of the Internal Revenue Code, Title 26, U.S.C., Section 23(p) (1) (C).[1]

1. Rev.Act 1942, Sec. 162(b); I.R.C., Sec. 23. Deductions from Gross Income. "(p) Contributions of an employer to an employees' trust or annuity plan and compensation under a deferred-payment plan.—(1) General Rule. If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent: * * * (C) In the taxable year when paid, if the contributions are paid into a stock bonus or profit-sharing trust, and if such taxable year ends within or with a taxable year of the trust with respect to which the trust is exempt under Section 165(a), in an amount *not in excess of 15 per centum of the compensation otherwise paid or accrued during the taxable year to all employees under the stock bonus or profit-sharing plan.* * * * The term

Practically all pertinent facts have been stipulated by the parties. The petitioner, Wooster Rubber Company, is an Ohio corporation engaged in the manufacture of molded rubber products and rubber household ware. Its books are kept and its income tax returns are made on an accrual basis. The corporation's fiscal year ends September 30th.

On September 28, 1944, the Board of Directors of the petitioner authorized the creation of a profit-sharing plan. Pursuant to this authority, petitioner two days later entered into an agreement in writing with the National City Bank of Cleveland, as Trustee, whereby "The Wooster Rubber Company Profit Sharing Plan" was established. Only the relevant portions of this lengthy document will be quoted:

"Article II

"The Plan

"Section (4)—Contributions to Plan— Employee Shares—

"(a) Each year on, or within sixty (60) days after, each anniversary date (including the initial anniversary date), the Company will contribute to the Trustee hereunder for the purposes of this Plan and Trust a sum (1) Equal to fifteen (15%) per cent of the compensation otherwise paid or accrued during the Company's fiscal year to the Participants and employees eligible to become Participants as of the anniversary date of the contribution. (2) In no event, however, shall the amount of the annual contribution by the Company * * * d. be in such an amount as to reduce by more than twenty-five (25%) per cent the net profits [as defined under sub-Paragraph (d) of Section (4) of this Article II] after deducting therefrom an annual dividend commitment equal to six (6%) per cent per share on the preferred stock, and Six ($6.00) Dollars per share on the common stock outstanding as of

'stock bonus or profit-sharing trust', as used in this subparagraph, shall not include any trust designed to provide benefits upon retirement and covering a period of years, if under the plan the amounts to be contributed by the employer can be determined actuarially as

the beginning of the last taxable year prior to the anniversary date as to which the contribution is to be made. * * * (d) For the purposes of this Agreement, the words 'net profits' shall mean the net earnings of the Company for each fiscal year ending September 30, as determined by the Company's independent accountants. *'Net earnings' shall be determined by said accountants on an accrual basis by deducting from the Company's gross earnings all current operating expenses, insurance, all state and local taxes and assessments, all Federal Taxes (including income, excess profits, declared value excess profits, and taxes on undistributed earnings, if any, and any Federal taxes levied or measured by income, now in effect or hereafter enacted),* current repairs and maintenance, depreciation, inventory losses, together with such items as in a similar line of business and in accordance with proper accounting practice would be charged to expenses; provided, however, that for the purposes of determining the amount of the contribution to this Trust for any year, *the amount of the contribution itself for such year shall not be included among the expenses.*" [Emphasis supplied.]

This original plan was submitted to the Bureau of Internal Revenue for approval. Representatives of the Bureau advised petitioner that certain changes in the plan would be required as a prerequisite to the Bureau's approval. Accordingly, on December 29, 1944, the Board of Directors of petitioner, by resolution, amended the Agreement and Declaration of Trust in several respects. We are concerned with only one amendment.

Article II, Section (4) (d) was amended by striking and substituting in lieu thereof the following:

"For the purposes of this Agreement, the words 'net profits' shall mean the net earnings of the Company for each fiscal year ending September 30 as determined

provided in subparagraph (A). If the contributions are made to two or more stock bonus or profit-sharing trusts, such trusts shall be considered a single trust for the purposes of applying the limitations in this subparagraph." (Emphasis supplied.)

by the Company's independent accountants. *'Net earnings' shall be determined by said accountants on an accrual basis by deducting from the Company's gross earnings all current operating expenses, insurance, all state and local taxes and assessments, all Federal taxes (including the amount shown on the original income tax return for the year in question of all income, excess profits, declared value excess profits, and taxes on undistributed earnings, if any, and any Federal taxes levied or measured by income now in effect or hereafter enacted),* current repairs and maintenance, interest, depreciation and amortization, inventory losses, and other losses sustained during such fiscal year, together with such items as in a similar line of business and in accordance with proper accounting practice would be charged to expense; provided, however, that gains realized upon the disposition of any property other than the stock in trade of the Company, or property held by the Company primarily for sale to customers in the ordinary course of its business, shall not be included in the gross earnings of the Company for such fiscal year; and, provided, further, that for the purposes of determining the amount of the contribution to this Trust for any year, *the amount of the contribution itself for such year shall not be included among the expenses,* but the amount of the contribution to the Pension Trust Plan shall be included among the expenses." [Emphasis supplied.]

Under the resolution of the Board of Directors, the amendments were made retroactive to September 30, 1944. On or about March 15, 1945, the Trust as thus amended was approved by the Commissioner of Internal Revenue as an exempt trust under the provisions of Section 165 (a) of the Internal Revenue Code.[2]

2. Sec. 165(a), I.R.C., Rev.Act of 1942, C. 619, Sec. 162(a), 56 Stat. 862, 26 U.S.C. § 165(a). "(a) Exemption from tax. A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall not be taxable under this supplement and no other provision of this supplement shall apply with respect to such trust or to its beneficiary—(1) if contributions are made to the trust by such employer, or employees, or both, for the purpose of distributing to such employees or their beneficiaries the corpus and income of the fund accumulated by the trust in accordance with such plan; (2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries; (3) if the trust or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits either—

"(A) 70 per centum or more of all the employees, or 80 per centum or more of all the employees who are eligible to benefit under the plan if 70 per centum or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding five years, employees whose customary employment is for not more than twenty hours in any one week, and employees whose customary employment is for not more than five months in any calendar year, or

"(B) such employees as qualify under a classification set up by the employer and found by the Commissioner not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees; and

"(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.

"(5) A classification shall not be considered discriminatory within the meaning of paragraphs (3) (B) or (4) of this subsection merely because it excludes employees the whole of whose remuneration constitutes 'wages' under section 1426(a) (1) (relating to the Federal Insurance Contributions Act) or merely because it is limited to salaried or clerical employees. Neither shall a plan be considered discriminatory within the meaning of such provisions merely because the contributions or benefits of or on behalf of the employees under the plan bear a

189 F.2d—56

Petitioner's Board of Directors on August 29, 1945, by resolution further amended the Agreement and Declaration of Trust to delete in its entirety Section (4) (e), not relevant here. The plan as thus amended was again approved by the Commissioner and in this form constitutes the profit-sharing plan in effect for the petitioner's fiscal years ended September 30, 1944, and September 30, 1945.

The net earnings of petitioner before the contribution and taxes for the years in question were $281,413.18 in 1944 and $281,681.43 in 1945. The dividend requirement referred to in Article II, Section (4) (a) (2) (d) of the profit-sharing plan was $18,720.00 in each of the taxable years ending September 30, 1944 and 1945. The taxable year of the trust established under the plan coincided with the taxable year of the petitioner.

Petitioner made contributions to the plan of $40,082.22 for the year 1944 and $39,854.67 for 1945. In each year, the contribution equaled exactly fifteen per cent of the compensation otherwise paid or accrued during that year to all employees under the profit-sharing plan. The taxpayer claimed a deduction for the full amount of these contributions in computing its federal income and excess profits taxes for 1944 and 1945.

In ascertaining the amount deductible for contributions under Section 23(p) (1) of the Internal Revenue Code, the Commissioner determined such contributions to be limited by Article II, Section (4) (a) (2) (d) of the profit-sharing plan to the amount of $17,717.95 for the fiscal year ended September 30, 1944, and to $17,718.53 for the fiscal year ended September 30, 1945; thus disallowing $22,364.27 of the deduction for the 1944 contribution and $22,136.14 for the 1945 contribution.

On November 19, 1948, petitioner received from respondent a notice, which asserted the following claimed deficiencies in tax:

Income tax fiscal year ended September 30, 1944 .......... $ 18.37
Excess profits tax fiscal year ended September 30, 1944 .... 19,201.96
Excess profits tax fiscal year ended September 30, 1945 .... 21,117.62

Total .................... $40,337.95

Petitioner admitted a deficiency of $1,310.54 for the fiscal year ending in 1944, but contested the remaining portion attributable to the disallowance of a part of the contribution to the profit-sharing trust. It took the same position with respect to the year 1945 and admitted a deficiency of $5,128.19, but contested that portion of the deficiency resulting from the disallowance of its actual contributions to the profit-sharing plan.

The Tax Court, in an opinion reviewed by the court, upheld the Commissioner's position and entered its decision holding a deficiency for 1944 of $18.37 in income tax and deficiencies in excess profits taxes for 1944 and 1945 in the amounts stated in the opening sentence of this opinion. Inasmuch as the only issue before the Tax Court was the extent of the deductibility of the contributions of the taxpayer to the profit-sharing plan, and inasmuch as the Commissioner conceded that the amounts contributed to the plan were reasonable, ordinary and necessary expenses of doing business, the area of contention was narrowed until it encompassed little more than interpretation of the language contained in Article II, Section (4) of the profit-sharing plan.

In the Tax Court, the Commissioner of Internal Revenue took the position that the company's contribution under the formula is limited to fifteen per cent of the compensation otherwise paid or accrued to participants eligible under the plan and that it

uniform relationship to the total compensation, or the basis or regular rate of compensation, of such employees, or merely because the contributions or benefits based on that part of an employee's remuneration which is excluded from 'wages' by Section 1426(a)(1) differ from the contributions or benefits based on employee's remuneration not so excluded, or differ because of any retirement benefits created under State or Federal law.

"(6) A plan shall be considered as meeting the requirements of paragraph (3) of this subsection during the whole or any taxable year of the plan if on one day in each quarter it satisfied such requirements."

is further limited to twenty-five per cent of the company's net profits after taxes and dividend commitments. In determining the amount allowable under the latter limitation, the Commissioner made his computations by use of an algebraic formula using two unknowns whereby the actual taxes due and the contribution are arrived at simultaneously.

On the other hand, the petitioner insisted that it was its intention from the outset that the plan should provide for payment of the maximum deductible contribution so long as payment of this amount would not reduce by more than twenty-five per cent the net profits which the company would have acquired, after taxes and dividend requirements, had no plan been in existence. Or, expressed another way, its contention was that it could properly pay into the plan fifteen per cent of the basic compensation of participating employees so long as these payments did not leave after the contribution, taxes and dividends, less than seventy-five per cent of the amount that would have been left, after taxes and dividends, had there been no plan at all.

In arriving at the amount of its contribution, petitioner computed the income and excess profits taxes on its net profits as though there were no plan in existence. Then the taxes so computed along with dividend requirements were deducted from net profits to arrive at a figure representing what the net profits, after taxes and dividends, would have been in the absence of the profit-sharing plan. Under taxpayer's formula, the net profits of the company, after the contribution, actual taxes, and dividends, must be at least seventy-five per cent of such figure.

The actual computations made by petitioner and respondent for the taxable year ended September 30, 1945, of the maximum amount required to be contributed by the terms of the Agreement and Declaration of Trust are set forth in the margin.[3]

3. (a) Petitioner's computation:
Net income before taxes and contribution _____$281,681.43
  Less: Taxes on $281,681.43 * _____$204,846.45
     Dividend commitment _____ 18,720.00 $223,566.45

                             58,114.98
  Less: 25% _____ 14,528.70

 * The actual Federal tax expense would be $167,486.90, based on taxable income of $281,681.43 less deductible contribution of $51,888.29.
Amount to be retained by company after contributions are determined _____$ 43,586.24

Maximum contribution which will leave the company $43,586.24:
   14,528.74 $\times$ $^{100}/_{28}$ (since the tax rate would be 72%) ___$ 51,888.29
(b) Respondent's computation:
Formula for contribution "C":
 C = .25(281,681.43 — T — 18,720)
Formula for excess profits tax "T":
 T = [ (281,618.43 — C) 80% — 20,340.37]90%
 C =  17,718.53
 T =  171,746.96
Net income before taxes and contribution: _____$281,681.43
  Less: Net excess profits tax _____$171,746.96
     Income tax _____ 20,340.37
     Dividend commitment _____ 18,720.00 210,807.33

Net profit for limitation under profit-sharing plan _____$ 70,874.10

Maximum contribution under 25% limitation _____$ 17,718.53

Though all the facts heretofore stated were stipulated and were found by the Tax Court, petitioner introduced at the hearing the testimony of four of its officers and employees for the purpose of establishing the company's intention in setting up the plan. All four witnesses testified that it was the taxpayer's intention from the outset that the contribution should be determined in the manner followed by petitioner. A fifth witness, the trust officer of the trustee bank, testified that this was also his understanding concerning the instrument.

Respondent produced one witness, a revenue agent assigned to the Pension Trust Division of the Cleveland Revenue Agent's Office, who testified with respect to the approval of the Wooster Rubber Company plan. The substance of his testimony was that, in approving the plan, his office interpreted the words of the instrument to call for a different method of computation from that adopted by the petitioner. He then pointed out that his construction provided for the method insisted upon by the Commissioner.

The Tax Court filed findings of fact which were based primarily on stipulations between the parties with the exception of the last finding, which was sharply disputed: "The Agreement and Declaration of Trust under which petitioner made contributions to its profit-sharing plan required that $17,717.95 be contributed by petitioner for the taxable year ended September 30, 1944, and $17,718.53 be contributed by petitioner for the taxable year ended September 30, 1945" (14 T.C. 1192).

The court, in its opinion, after holding that the only interpretation of the plan possible was that urged by the Commissioner, asserted that approval by the Commissioner of an employees' trust as tax exempt under section 165(a) is a prerequisite to allowance as a deduction under Section 23(p) (1) (C) of an employer's contributions to such a trust. The court then said: "To qualify as tax exempt under section 165(a), the employees' trust must be part of a plan designed and applied to enable the employees or their beneficiaries to share in the profits of their em-

ployer's trade or business according to a predetermined formula. Regulations 111, section 29.165–1; Lincoln Electric Company Employees' Profit Sharing Trust v. Commissioner of Internal Revenue, 14 T.C. 598. If the provisions of the plan are approved, the trust set up under it is exempt from tax, and under section 165(b) the contributions made to the trust are taxable to the employees benefited only when distributed or made available to them. The profit-sharing plan to which petitioner made payments was exempt under section 165(a), but we have held that only part of the payments made by petitioner were to or under a plan as envisaged by sections 165(a) and 23(p) (1) (C) and approved by the Commissioner. Only such payments as were actually called for by the predetermined formula contained in the Agreement and Declaration of Trust are deductible under section 23(p) (1) (C) * * *."

On its petition for review in this court, the taxpayer makes two broad assignments of error: (1) That the Tax Court erred in the light of the evidence adduced in failing to hold that the language used in Article II, Section 4, of the Declaration of Trust, as amended, required the petitioner to make contributions to its profit-sharing trust of $40,082.22 in the fiscal year ending September 30, 1944, and $39,854.67 for the fiscal year ending September 30, 1945; and (2) that the Tax Court erred in failing to hold that when an employer has established a profit-sharing trust and has consistently made contributions thereto pursuant to the interpretation given the trust instrument by the employer, the trustee, and the beneficiaries, and when trust instrument so interpreted constitutes an exempt trust under Section 165(a) of the Internal Revenue Code, the full amount of the contribution shall be allowed as a deduction from income so long as the amount of the contribution does not exceed any of the expressed limitations of Section 23(p) (1) (C) of the Internal Revenue Code.

The Commissioner contends that the instrument setting forth the profit-sharing plan is clear, unambiguous, and permissive only of the interpretation put upon it by

the Tax Court; and that, this being true, payments made by taxpayer in excess of the amounts called for its formula were not made pursuant to the plan, were altogether voluntary, and therefore not deductible.

Section 23(p) (1) (C) allows a deduction from net income in the taxable year of amount paid (within fifteen per cent limitation) into a profit-sharing trust, "if such taxable year ends within or with a taxable year of the trust with respect to which the trust is exempt under section 165(a)" of the Internal Revenue Code. In Treasury Regulations 111, Sec. 29.165.1, the Commissioner has interpreted Section 165(a) to require a definite, predetermined formula for computing the amount of the contribution.

Inasmuch as the Commissioner has conceded that payments do not exceed the fifteen per cent limitation of Section 23(p) (1) (C), that the payments are ordinary, reasonable and necessary expenses of doing business, and that under his interpretation of its strictures the plan is exempt under Section 165(a), the only question for our determination is whether the Tax Court correctly construed the language of the plan.

■ The employees' profit-sharing trust agreement, having been formulated and executed and its provisions carried out in Ohio, is to be interpreted in conformity with the law of that state. Hopkins v. Commissioner of Internal Revenue, 6 Cir., 144 F.2d 683, 688, 158 A.L.R. 1301. See also Commissioner of Internal Revenue v. Lewis, 3 Cir., 141 F.2d 221; Bedford v. Commissioner of Internal Revenue, 2 Cir., 150 F.2d 341; Newton Trust Co. v. Commissioner of Internal Revenue, 1 Cir., 160 F.2d 175.

■ Under the rule in Ohio, the syllabus alone is considered to be binding law. The first syllabus in Walbridge v. Toledo Trust Co., 62 Ohio App. 358, 23 N.E.2d 980, 981, declares that "in the construction of a written trust, the intention of the settlor must be ascertained not merely from an examination of the language used in the entire trust instrument, but also from an examination and consideration of all facts and circumstances leading up to and surrounding the execution of it."

■ It is generally recognized that when any provision in a trust instrument is ambiguous, extraneous evidence may be considered to ascertain the settlor's intention. See Rand v. Helvering, 8 Cir., 116 F.2d 929, 932.

The language of the formula in the present controversy seems to us to be ambiguous. Neither construction urged is so clearly responsive to the mandates of the instrument as to indicate that either expresses the only possible meaning attributable to the language of the plan.

The circumstances surrounding the formulation of the profit-sharing plan and the trust instrument support the insistence that the officers and directors of the company intended to provide the method of computation which petitioner used. Upon the hearing, the petitioner called four witnesses who attended the meetings out of which evolved the profit-sharing plan. They had all been active in its formulation. These witnesses were, respectively, the company's president and general manager, its secretary-treasurer, its auditor, and a professional consultant for profit-sharing and group plans. All of them testified positively that, in setting up the plan, it was their intention that the company should pay to the trustee fifteen per cent of the basic compensation of covered employees, so long as payment of this amount did not reduce by more than twenty-five per cent the net profits, after taxes and dividends; that the company would have had if no plan had been in existence. The secretary-treasurer of petitioner, who had charge of the computations under the plan, testified that in "their" opinion the amendments required by respondent did not alter the method of computing the contribution. The testimony of these witnesses was uncontradicted. There was no evidence of any intention on the part of petitioner to adopt a different formula for the computation of the amount of the contri-

bution when it made the amendments insisted upon by the Commissioner.[4]

Additional persuasive evidence of the intention of the petitioner is found in its acts subsequent to the execution of the Declaration of Trust.

■ As was said by Circuit Judge (now Mr. Justice) Minton: "There is no doubt that settlor's subsequent acts are of great significance in construing an ambiguous trust instrument." Helfrich's Estate v. Commissioner of Internal Revenue, 7 Cir., 143 F.2d 43, 46. See also, Potter v. Madison Willow Craft Co., 6 Cir., 73 F.2d 406, 408; Holyoke Water Power Co. v. American Writing Paper Co., 1 Cir., 68 F.2d 261, 265.

In Courtright v. Scrimger, 110 Ohio St. 547, 144 N.E. 294, the Supreme Court of Ohio thus wrote in a syllabus: "Where words used in a contract are susceptible of more than one meaning, and the signatories to the contract have by acts done in carrying out the terms thereof placed their own interpretation upon the meaning of the words, courts will adopt the interpretation which the signatories to the contract have themselves made." See to same effect a recent opinion of the Supreme Court of Ohio in State ex rel. Burgess & Niple v. Linzell, 153 Ohio St. 545, 552, 93 N.E. 2d 9, 12, wherein it was said that where "words used in a contract are reasonably susceptible of more than one interpretation and the parties to such contract have by their acts and conduct in the performance of the contract over a reasonable period of time mutually adopted one of those interpretations, the interpretation so adopted will be given to those words."

Uncontradicted evidence indicates that on September 30, 1944, its directors knew approximately what the profit for the taxpayer company would be for the year ending that day, and in estimating the amount to be deposited with the trustee they selected the sum of $30,000 with the understanding that the balance would be paid when the exact amount could be determined. Such action does not harmonize with an intention to contribute an amount not to exceed $17,717.95. Moreover, at the time of the Tax Court hearing, this same method of computation had been used consistently for the entire five years the plan had been in operation. Further evidence of petitioner's intent is disclosed by the fact that the plan as interpreted by the taxpayer formed an integral part of the collective bargaining contract between petitioner and the United Rubber Workers, C.I.O.

■■ In construing a trust instrument, weight should be accorded the interpretation placed by the parties upon the language used in the instrument. Helvering v. McCormack, 2 Cir., 135 F.2d 294, 297; Claiborne-Reno Co. v. E. I. DuPont de Nemours & Co., 8 Cir., 77 F.2d 565, 568. The Supreme Court of Ohio has stated: "It is an established doctrine of law that where private citizens have made a contract and their conduct under that contract has given construction to its terms, the court in construing the same will give great weight to the construction given it by the parties themselves, especially if the language is in any wise ambiguous." State ex rel. Weinberger v. Miller, 87 Ohio St. 12, 33, 99 N.E. 1078, 1081, 44 L.R.A.,N.S., 712.

■ An indication of the intention of the settlor of a trust is the interpretation put on that instrument by the trustee, for presumably a trustor in setting up a trust will make his wishes and purposes known to his trustee. Huntington National Bank v. Commissioner of Internal Revenue, 6 Cir., 90 F.2d 876, 878. Compare Otoe County National Bank v. Delany, 8 Cir., 88 F.2d 238, 244.

The trust officer of the National City Bank of Cleveland, trustee under the plan,

4. The only change material to the calculation provisions of the plan was in Article II, Section 4, in which "all federal taxes (including income, excess profits, declared value excess profits * * *)" was amended to "all federal taxes (including the amount shown on the original income tax return for the year in question of all income, excess profits, declared value excess profits * * *)". Other provisions remained substantially the same.

testified that in his opinion the method of computation outlined in the profit-sharing plan of the petitioner fell into a classification formula designed to protect profits from reduction by more than a given percentage.

It would seem unlikely that petitioner would voluntarily have contributed more than twice the amount called for by the formula contained in the plan despite the fact that seventy-two cents of every dollar so contributed would be borne by the government. There is in this case no evidence or hint of any attempt on the part of petitioner to avoid the payment of taxes lawfully due from it. The money has been paid over in good faith to the trust fund for the benefit of the employees, and the adoption by this court of the construction urged by the Commissioner would have the effect of causing petitioner to pay tax on account of money expended for reasonable, ordinary and necessary business expenses.

 Finding as we do that the instrument creating the profit-sharing plan was ambiguous, we think the Tax Court should have considered evidence adduced by petitioner which bore on its intention concerning the method of computing the amount of the contribution to the trust. The petitioner's witnesses were qualified and unimpeached; and no evidence was offered in contradiction of their sworn statements. In such circumstances, their testimony should have been accepted. Chesapeake & Ohio Railway Company v. Martin, 283 U.S. 209, 218, 51 S.Ct. 453, 75 L.Ed. 983; Wright-Bernet v. Commissioner of Internal Revenue, 6 Cir., 172 F.2d 343, 346; Capitol-Barg Dry Cleaning Co. v. Commissioner of Internal Revenue, 6 Cir., 131 F.2d 712, 715.

That respondent, in approving the plan for exemption under Section 165(a) and Regulations 111, Section 29.165–1, ascribed a different meaning to the words of the plan is of no evidentiary value in establishing the intention of the settlor of the trust, for respondent was not a party to the transaction.

There is no dispute in regard to the exemption of petitioner's plan, except as to the formula requirements; it has been stipulated that the challenged contributions do not exceed the fifteen per cent limitation of Section 23(p) (1) (C); and the plan, interpreted according to petitioner's intent, is plainly qualified for exemption under Section 165(a). For these reasons, the Tax Court should have allowed deductions in the full amount of the contributions for the years in question.

The decision of the Tax Court is reversed and the case is remanded with instructions that a decision be entered assessing against the petitioner deficiencies which were stipulated by the parties to be correct should the taxpayer prevail; such deficiencies being in excess profits taxes of $1,310.54 for the fiscal year ended September 30, 1944, and $5,128.19 in excess profits taxes for the fiscal year ended September 30, 1945.