THE CLEVELAND TRUST CO., TRUSTEE, *v.* SHUMAN, CO-EXECUTOR, ET AL.

(No. 907582—Decided February 4, 1974.)

Court of Common Pleas of Cuyahoga County.

*Messrs. Hahn, Loeser, Freedheim, Dean & Wellman* and *Mr. Frank E. Joseph, Jr.,* for plaintiff.

*Messrs. Jones, Day, Cockley & Reavis, Mr. Thomas P. Mulligan, Mr. Joel M. Garver, Messrs. Squire, Sanders & Dempsey, Mr. Charles M. Driggs, Messrs. Zidar, Morgan, Baylog & Burns, Mr. Matthew A. Zidar* and *Mr. Stanley B. Wiener,* for defendants.

FINK, J. The pertinent facts in this case are that on March 24, 1942, Ralph S. Silver established the Ralph Silver Trust with The Cleveland Trust Company as trustee. The Ralph Silver Trust became irrevocable upon Ralph Silver's death on November 12, 1957. After Ralph Silver's death, the trust agreement provides for payments of the net income and such amounts of trust principal as the trustee may deem necessary and proper for maintenance, comfort, and support to Ruth Silver, Ralph Silver's wife, for her lifetime. Ruth Silver survived her husband. Upon the death of Ruth Silver, the following provision will become applicable:

"Subject to the foregoing provisions for myself and my wife, the trust estate upon the death of myself and my wife shall be treated and disposed of as follows: The Trustee is directed to pay to my cousin, FRANCES HORWITZ, the sum of Twenty-Five Hundred Dollars ($2,500.00) if she survives the survivor of myself and my wife. The residue of the trust estate shall be divided into four (4) equal shares, each of which shall be and become a separate trust estate, and one such trust estate shall be held primarily for the benefit of each of my four children, namely, RALPH S. SLVER, JR., MAXINE J. CRONBACH, FRANCIS F. SILVER and ERNEST J. SILVER; and promptly after the death of the survivor of myself and my said wife, the Trustee shall distribute to each of my said four children then surviving his or her said trust estate, together with all income accumulated, accrued and accruing thereon.

*"In the event of the decease of any of my said children whether before or after the death of the survivor of myself and my wife, and before receiving full distribution of the trust estate to be so established for his or her primary benefit, the said trust estate of such deceased child shall vest in such of the surviving spouse and/or issue of such deceased child in such manner as such deceased child may have appointed under his or her Last Will and Testament.* However, in default of such testamentary appointment, then such deceased child's share shall vest in the issue whether by blood or adoption, *per stirpes*, of such deceased child. If such child shall have no issue, then the share of such

deceased child who shall have died without exercising such testamentary appointment, shall vest in the next of kin of the blood of such deceased child, *per stirpes.*'' (Emphasis in first quoted sentence of second quoted paragraph is added.)

One of Ralph Silver's children, Ernest J. Silver, died on July 19, 1961, leaving a will which was executed on April 15, 1959 (after Ralph Silver's death) and which was admitted to probate in Japan in the Tokyo Family Court on August 1, 1961. The fifth clause of that will provides as follows:

''Fifth: *All the rest, residue and remainder of the property,* whether real, personal or mixed, moveable or immoveable, wherever situated, and whether now owned by me or hereafter acquired, which at my death I may own *or to which I may in any manner be entitled or over which I may have any power of appointment, I give, devise and bequeath to my wife, Jill Tomhave Silver, absolutely and without restriction.*'' (Emphasis added.)

Jill Tomhave Silver died January 1, 1971, leaving a will which was executed on November 3, 1970, and which was admitted to probate on January 20, 1971, in the Superior Court of San Mateo County, California. Letters testamentary were duly issued on January 20, 1971, appointing John R. Shuman and Crocker National Bank as Co-Executors of the Estate of Jill Tomhave Silver. Item III of Jill Silver's will provides as follows:

''Under the provisions of a certain trust created by written agreement dated March 24, 1952, by and between Ralph S. Silver, of Cleveland, Ohio, as trustor, and The Cleveland Trust Company, of Cleveland, Ohio, as trustee, my late husband, Ernest J. Silver, was granted a remainder interest therein on the death of the survivor of the said Ralph S. Silver and my late husband's mother, Ruth F. Silver; and was further granted a power of appointment by will over such remainder interest in the event of his death prior to receiving full distribution thereof. My said late husband died before receiving any such distribution, and exercised such power of appointment in and by his

Last Will and Testament executed April 15, 1959, thereby appointing such remainder interest to me, In the event, then, that I should predecease the said Ruth F. Silver, and that upon her subsequent death such remainder interest shall be distributable to my estate, I direct that the same shall be deemed a part of my residuary estate, to be disposed of as provided in Article V of this Will.''

Item V of Jill Silver's will provides as follows:

"I give, devise and bequeath all of the rest, residue and remainder of my estate of every nature and wheresoever situate, to JOHN R. SHULMAN and the CROCKER-CITIZENS NATIONAL BANK, as trustees under that certain Agreement with myself dated August 5, 1970, known as the ''Jill T. Silver Trust of 1970,'' and any amendments thereto made prior to my death, to be added to the trust created thereunder and held, administered and distributed according to its terms * * *.''

The trust agreement referred to in Item V of Jill Silver's will is the Jill Silver Trust referred to above.

The plaintiff herein seeks an order of this court declaring whether Ernest J. Silver possessed a special testamentary power of appointment under the Ralph Silver Trust; if he had such an appointment, whether he effectively exercised such special testamentary power of appointment in his last will and testament; and, if he did effectively exercise such power of appointment, whether, by reason of such exercise, the Estate of Jill Tomhave Silver and/or the Jill Silver Trust possess a vested remainder in the separate trust estate to be held for the benefit of Ernest J. Silver, deceased, upon the death of Ruth Silver, pursuant to the provisions of the Ralph Silver Trust.

Before turning to these questions, it is necessary to deal with several subsidiary points which were raised in the briefs. It has been argued that the question of whether Ernest Silver exercised his power of appointment under the Ralph Silver Trust is not presently ripe for determination since no party to this action is claiming that they are presently entitled to receive distribution of the separate trust estate to be held for the benefit of Ernest J. Silver

upon the death of Ruth Silver, pursuant to the Ralph Silver Trust. Thus it is asserted that this court should refuse to render a declaratory judgment. While it is true that under R. C. 2721.07 it is in the discretion of this court to refuse to render a declaratory judgment when such judgment or decree would not terminate the uncertainty or controversy giving rise to the proceeding, no such uncertainty exists in this case. The only possible contingency that Ernest Silver's share of the Ralph Silver Trust will not be distributed to one or more of the parties to this litigation is that the Ralph Silver Trust would be exhausted by the trustee's having to make distributions to Ruth Silver, a lady of advanced years. Due to the substantial size of the trust, the vesting of Ernest Silver's share is practically certain to occur, and in such a situation courts have been inclined to grant declaratory judgments. Borchard, Declaratory Judgment (2 Ed.), at 61, 410; *Lloyd* v. *Campbell* (P.C., Cuyahoga County, 1963), 91 Ohio Law Abs. 522, 189 N. E. 2d 660.

It has also been argued that the construction of the Ralph Silver Trust and the determination of whether Ernest Silver exercised his special testamentary power of appointment must be determined under the law of Japan. This argument is completely without merit. It is clear under Ohio law that "where an inter vivos trust is formulated, executed, and its provisions carried out in Ohio, it is to be interpreted in conformity with Ohio law." 53 Ohio Jurisprudence 2d 431, Trusts, Section 22. See, also, *Wooster Rubber Co.* v. *Commr. of Internal Revenue* (C. A. 6, 1951), 189 F. 2d 878, 45 O. O. 350, 62 Ohio Law Abs. 385; *Guaranty Trust Co. of New York* v. *Brunton* (Sup. Ct. 1947), 74 N. Y. Supp. 2d 254. It is equally well settled that the question of whether a power of appointment was validly exercised must be determined under the law of the domicile of the donor of the power. Annotation, Conflict of laws as to exercise of power of appointment, 150 A. L. R. 519; *First-Central Trust Co.* v. *Claflin* (C. P. Summit Co., 1947), 49 Ohio Law Abs. 29, 73 N. E. 2d 388. While only a few cases have been decided in Ohio dealing with this ques-

tion, it is concluded in 9 Ohio Jurisprudence 2d 819, Conflict of Laws, Section 106, that:

"* * * It is the prevailing doctrine with regard to personal property that the will of the original donor, who creates the power of appointment, is the instrument by which title is really transferred, and that the donee of the power is but his agent to effect the transfer. It has been held, therefore, that if the will by which the donee of the power attempts to exercise it conforms to the requirement of the law of the original donor's domicile, though not of his own, it will be sufficient. But it is likewise held that if the donee's will complies with the law of his own domicile, so as to be a valid will for the transfer of personalty, it will be valid to exercise the power, even though it does not comply with the requirements of the donor's domicile."

See, also, *Matter of Bauer* (1964), 14 N. Y. 2d 272, 200 N. E. 2d 207; *Prince de Bearn* v. *Winans* (1909), 111 Md. 434, 74 A. 626; *Tudor* v. *Vail* (1907), 195 Mass. 18, 80 N. E. 590; *Russell* v. *Joys* (1917), 227 Mass. 263, 116 N. E. 549; *Matter of Deane* (1958), 4 N. Y. 2d 326, 151 N. E. 2d 184; *Barton Trust* (1944), 348 Pa. 279, 35 A. 2d 266.

Turning then to the basic issues in this case, none of the parties have contended that the Ralph Silver Trust did not validly create a special testamentary power of appointment in Ernest Silver. This is understandable since the language of the Ralph Silver Trust quoted above explicitly created a special testamentary power of appointment for any child of Ralph Silver over their respective share of the Ralph Silver Trust.

Therefore the basic issue in this case is whether Ernest Silver by his last will and testament effectively exercised the special testamentary power of appointment which he clearly had over his share of the Ralph Silver Trust. In pertinent part, the fifth paragraph of Ernest's will provides that "all * * * of the property * * * over which I may have any power of appointment, I give * * * to my wife * * *." This language conclusively evidences Ernest's intent to exercise his power of appointment in favor of Jill Silver, and since no evidence has been presented which

would negate this conclusion, it must be held that the power was effectively and validly exercised.

It is well established that the determination of whether a power of appointment has been exercised rests solely upon the question of whether the donee of the power intended to exercise the power. *Blagge* v. *Miles* (Cir. Ct. Mass. 1841), 3 F. Cas. 559, No. 1479; 43A Ohio Jurisprudence 2d 426, Powers, Section 29; 5 Bowe-Parker 552, Page on Wills, Section 45.21; 72 Corpus Juris Secundum 439, Powers, Section 40. Some older cases have indicated such intent to exercise a testamentary power of appointment could only be found if at least one of the following three questions could be answered affirmatively: (1) Did the will expressly refer to the power? (2) Did the will refer to the property which was the subject of the power? (3) Would the will, or provisions thereof, on the basis of surrounding circumstances, be ineffective, invalid, inoperative, or meaningless unless construed as an exercise of the power of appointment? *Bishop* v. *Remple* (1860), 11 Ohio St. 277; *Arthur* v. *Odd Fellows' Beneficial Assoc.* (1876), 29 Ohio St. 557. Modern courts have relaxed the rule regarding how intent to exercise a power of appointment may be proved and have been willing to find such intent from all of the facts and circumstances. *Blagge* v. *Miles*, 3 F. Cas. 559, *supra*.

"The modern tendency seems to be to relax the rule requiring the intention to execute the power to be clearly established, and to hold that if, from the tenor and effect of the will, construed in the light of the circumstances surrounding the testator at the time of the execution of the power, it can be fairly determined from all the competent evidence available that it was the intention of the testator to execute the power, such intention will be given effect. But where the testator has other property, so that the provisions in the will would be effectual without the exercise of the power, and there is not reference in the will either to the power or to the subject matter of the power, it is generally held that it has not been shown that there was an intention to execute the power." *Kiplinger* v. *Armstrong* (Summit County, 1930), 34 Ohio App. 348, 352.

Even if the older and stricter view regarding the proof of a donee's intent to exercise a power of appointment is followed, the will of Ernest Silver evidences a clear intent on his part to exercise his power of appointment over his share of the Ralph Silver Trust. His will refers to the property which was the subject of the power, it refers to the power of appointment, and the language "over which I may have any power of appointment" would be meaningless if it is not taken as intended to exercise the power of appoinment which Ernest had at his death.

Indeed Ernest Silver's will is but an example of the common practice of "blanket" exercises of powers of appointment. The efficacy of such clauses in exercising powers of appointment is well recognized. See 5 Casner, American Law of Property 555, Section 23.38; Simes and Smith, The Law of Future Interests at 424 (2 Ed.), Section 973; 3 Restatement of Property 1906, Section 341. An example of such a blanket exercise of a power of appointment is found in the recent case of *Dollar Savings & Trust Co.* v. *First National Bank* (C. P., Mahoning County, 1972), 32 Ohio Misc. 81, where the court held that the following language in a will exercised a general power of appointment which the testator had at her death:

"All the rest and residue of my property and estate of every kind and nature of which I shall die seized or possessed or to which I shall in any way be entitled or to which my estate may subsequently become entitled or over which I may have any power of appointment at the time of my death, I devise and bequeath * * * [to a named Trustee]."

See, also, *In re Buck Trust* (Del. Ch. 1971), 277 A. 2d 717; *White* v. *Holly* (1908), 80 Conn. 438, 68 A. 997; *Farnum* v. *Pennsylvania Co. for Ins. on Lives* (1916), 87 N. J. Eq. 108, 99 A. 145, affirmed *per curiam* (1917), 87 N. J. Eq. 652, 101 A. 1053.

Having thus decided that Ernest Silver effectively exercised his special testamentary power of appointment over his share of the Ralph Silver Trust in favor of his wife Jill Silver, it necessarily follows that Jill Silver at her death had a vested right in Ernest Silver's share of the

Ralph Silver Trust. This vested right passed to her estate, and, under Items III and V of her will quoted above, she bequeathed this right to her co-trustees under the Jill Silver Trust.

WHEREFORE, IT IS ORDERED, ADJUDGED, AND DECLARED as follows:

1. That Ernest J. Silver, deceased, at the time of his death possessed a special testamentary power of appointment under the Ralph Silver Trust, as to that part of the Ralph Silver Trust to be set aside for his benefit upon the death of Ruth Silver (such part being hereinafter called "Ernest's share" of the Ralph Silver Trust);

2. That Ernest J. Silver, deceased, validly and effectively exercised his special testamentary power of appointment under the Ralph Silver Trust in favor of his wife, Jill Tomhave Silver as to all of Ernest's share in the Ralph Silver Trust;

3. That the Estate of Jill Tomhave Silver, by reason of the exercise by Ernest J. Silver, deceased, of his said power of appointment, possesses a vested remainder in Ernest's share of the Ralph Silver Trust and that upon the death of Ruth Silver, The Cleveland Trust Company, as trustee of the Ralph Silver Trust, or its successor as Trustee, shall, and is hereby ordered and directed to, transfer to John R. Shuman and Crocker National Bank, as co-executors of the Estate of Jill Tomhave Silver, or to their successors in interest, Ernest's share of the Ralph Silver Trust; and

4. That the costs of this suit including fees shall be paid from the principal of the Ralph Silver Trust. The award of fees to the guardian ad litem, trustees for suit, and counsel for other defendants will be postponed pending written applications therefore within 28 days of the date of this order.

*Judgment accordingly.*