Robinson, J.
 

 The property involved in this proceeding is the north one-third of in-lot No. 250, in the city of Columbus, which property came to Oma Courtright, now deceased, by descent from John Courtright, and was awarded and sparted to her in a partition proceeding filed immediately after the death of John Courtright. She married one Charles W. Serimger* and thereafter died intestate, leaving no child or any representative of any deceased child. Under the law of descent and distribution the real estate thereupon vested in Charles W. Serimger for life, the remainder in her brothers and sister and the heirs of a deceased sister. Of such brothers, Fleetwood Courtright, Sr., was one, and seized in remainder of the one-fourth part thereof.
 

 A suit in partition was filed by Albert Court-right, another brother of Oma Courtright, deceased, against Fleetwood Courtright, Sr., a sister, the heirs of a deceased sister, and the owner of the life estate, and such proceedings were had thereon that it was adjudged by the court of common pleas of Franklin county that the plaintiff, Albert Court-right, and the defendants, the brother and sister of Oma Courtright and the heirs of a deceased
 
 *549
 
 sister, were not entitled to partition thereof, and an entry was journalized in part as follows:
 

 “It is therefore adjudged and decreed that the plaintiff’s petition in so far as it relates to said first described parcel of real estate, part of inlot No. 250, be and is hereby dismissed, but without prejudice to any claim of the plaintiff or of the defendants, Fleetwood Courtright, Leslie Williams, Ada Gr. Bulen and Joseph E. Bulen, as heirs at law of said Oma Courtright; that they are the owners of said real estate in fee subject to the life estate as aforesaid of said William C. Scrimger [Charles W. Scrimger].”
 

 Thereafter Fleetwood Courtright, Sr., died intestate, leaving as his only heirs at law, Cecil Clyde Goff, Nellie C. Stolz, Ruth M. Courtright and Fleetwood Courtright, Jr., children by his marriage with Elizabeth Courtright, plaintiff in error, and Olive Courtright Price, a child of a former marriage, and George E. Freshwater, Stanley Freshwater and Oma Orr, children of a deceased daughter of a former marriage; the property involved in this proceeding being the undivided one-twelfth of the above-described premises, and the interested parties to this proceeding being the plaintiff in error and the defendants in error Olive Courtright Price, George E. Freshwater, Stanley Freshwater, and Oma Orr, who will be hereinafter referred to as the interested defendants in error.
 

 Prior to his death Fleetwood Courtright, Sr., had conveyed to the interested defendants in error large real estate holdings, in which conveyance his then wife, plaintiff in error, did not join or release her right of dower. At the time of his death,
 
 *550
 
 in so far as this record discloses, he was the owner of a house and lot in the city of Columbus, which he occupied as a residence, two undescribed properties in the northern part of Columbus, two lots in the city of Delaware, an estate in remainder in one-fourth of the property, the one-twelfth of which is here in controversy, some stocks, bonds and other personal property.
 

 His son, Fleetwood Courtright, Jr., was appointed administrator of his estate. 'Shortly thereafter a controversy arose between the widow and her children on the one hand and the interested defendants in error on the other, involving the right of the plaintiff in error to dower in their lands, the extent of the estate of which Fleetwood Courtright, Sr., died seized, and their respective rights thereto and therein, and various other matters growing out of the devolution of property from Fleetwood Courtright, Sr., to them. Litigation was begun in several forms pertaining to various matters in controversy, and, as a result thereof, and with a view to ending all controversy, a contract was entered into, signed by the interested defendants in error, which contract is as follows:
 

 “We, the undersigned, Olive Price, unmarried; John Freshwater, widower, Oma Freshwater Orr and Frank Orr her husband; Stanley Freshwater, unmarried; George Elmer Freshwater and Edith Freshwater, his wife, in consideration of the sum of one dollar to us in hand paid, the receipt of which is hereby acknowledged, and in further consideration of certain allowances this day made by Elizabeth Jane Courtright to Elwood Price, Leroy Price, Oma Freshwater Orr, Stanley
 
 *551
 
 Freshwater and George Elmer Freshwater, in connection with the settlement of the dower of Elizabeth Jane Conrtright in the farms deeded by Fleet-wood Conrtright, Sr., deceased, to each of said above named grandchildren of said Fleetwood Conrtright, Sr., have and by these presents do hereby sell, assign and transfer to the said Elizabeth Jane Conrtright all of the right, title and interest in and to the estate of Fleetwood Conrtright, Sr., deceased, which each one of ns has as an individual, either by reason of blood relationship to said Fleetwood Conrtright, Sr., deceased, or by reason of marriage with an heir of said Fleetwood Conrtright, :Si\, deceased; it being the agreement of each and all of the above named parties with the said Elizabeth Jane Conrtright, and the intent of this instrument to convey to the said Elizabeth Jane Conrtright all of the interest of each and all of the above named parties in the estate of said Fleetwood Conrtright, Sr., no matter what kind of an interest each and all of the above parties may have therein, no matter what kind of property said estate may consist of or where the same is located; and if it is necessary to carry out the terms of this agreement that any or all of the above named parties shall execute and deliver a deed or deeds for real estate belonging to said estate, then and in that event each and all of the above parties hereby agree to sign, execute and deliver to the said Elizabeth Jane Conrtright deed or deeds for their interest in said real estate.
 

 “This agreement applies to all property of said estate, real, personal or mixed, wheresoever located.
 
 *552
 
 whether now known to the parties hereto, or hereafter discovered.
 

 “It is further a part of this agreement that neither the said Fleetwood Oourtright, Jr., the said Elizabeth Jane Oourtright, or any of the other heirs and children of Fleetwood Oourtright, deceased, shall hereafter make or assert any claim of any kind, nature or description against the parties whose names are hereto signed, growing-out of any dispute or litigation heretofore brought or now existing and the intent and purpose of this agreement is to fully settle and adjust all matters of difference now or heretofore existing growing out of the settlement of the estate of Fleetwood Oourtright, deceased, all to be in effect upon the delivery of the deeds hereinabove mentioned, and the delivery of this agreement.
 

 “It is further agreed by each and all of the above named heirs of Fleetwood Oourtright, Sr., deceased, that all exceptions to the inventory of Fleetwood Oourtright, Jr., as administrator of the estate of Fleetwood Oourtright, Sr., shall be dismissed, and said Fleetwood Oourtright, Jr., shall be permitted to close up the administration of his father’s estate without further objections or exceptions upon the part of any of the above named persons; that the Freshwater heirs of said Fleet-wood Oourtright shall deed their interest in the homestead located on West Fifth avenue, Columbus., Ohio, to the said Elizabeth Jane Oourtright, as part of this settlement; that the suit for partition and accounting involving said homestead shall be dismissed with prejudice, and any and all other litigation now pending between any of the above
 
 *553
 
 named parties and Elizabeth Jane Conrtright, or against Fleetwood Courtright in connection with his administration of his father’s estate, or in any manner growing ont of the settlement of the estate of Fleetwood Conrtright, Sr,, shall be dismissed with prejudice, at the costs of said estate or of Elizabeth Jane Courtright, provided, howeveir, that no attorney fees shall in any manner be taxed in the costs in connection with any of said suits.
 

 “In witness whereof the parties above named have hereunto set their hands this 20th day of January, 1920.
 

 “Oma Freshwater Orr.
 

 “Frank Orr.
 

 “G. E. Freshwater.
 

 ‘ ‘ Edith Freshwater.
 

 “Stanley Freshwater.
 

 “John Freshwater.
 

 “Olive Price.
 

 “Witnesses:
 

 “Nellie Bartholomew.
 

 “F. M. Marriott.”
 

 In pursuance of that contract deeds were executed to the plaintiff in error by the interested defendants in error for the lots in the city of Delaware and the real estate in the city of Columbus, and a deed was executed by the plaintiff in error to the interested defendants in error relinquishing her right of dower in the real estate that had theretofore been conveyed to them by Fleetwood Courtright, Sr., in his lifetime, and certain payments in cash were made by the interested defendants in error to the plaintiff in error.
 

 
 *554
 
 Thereafter Charles W. Scrimger, the life tenant, died, whereupon a petition for partition was filed hy Leslie M. Scrimger, a daughter of a sister of Oma Courtright, deceased, averring that she was the owner of the undivided one-fourth part of the real estate above described, and seeking partition, and making the plaintiff in error and the interested defendants in error parties, to which proceeding the plaintiff in error filed a cross-petition setting up the contract above referred to averring the effect of it to be an equitable transfer of the entire ownership of the interested defendants, in error in such property to her, and asking the court to. decree her to be the legal owner thereof and to require them to execute a deed in pursuance of the agreement.
 

 The various interested defendants in error answered the cross-petition of the plaintiff in error, denying the legal effect of the contract, denying that the property here in controversy was at the time of the execution of the contract a part of the estate of Fleetwood Courtright, Sr., and averring that if it were such a part they had at the time no knowledge of the existence of their interest therein; that plaintiff in error had no knowledge of such interest, or, if she had such knowledge, had fraudulently concealed same from them; that it was not their intention that the contract should affect their interest in this real estate; that had they known of their interest therein they would not have executed the contract; that plaintiff in error concealed from them her knowledge of their interest in this real estate for the purpose of acquiring their interest by fraud and deceit; and praying the court
 
 *555
 
 to find them to be the owners of the real estate in question, and that upon partition their interests be set
 
 off
 
 to them in severalty; and further praying that, if the court should find that the real estate constituted a part of the estate of Fleetwood Court-right at the time the contract was executed, the court should set the contract aside and hold it for naught in so far as it appertained to the real estate in question.
 

 The cause was heard in the court of common pleas where oral evidence was introduced, which oral evidence disclosed that up to the time of the execution of the contract there had been much divergence of opinion between the parties hereto with reference to the settlement of the estate of Fleet-wood Oourtright, Sr., deceased, and their various rights thereto, out of which had grown litigation and estrangement; that the parties were all of lawful age and were represented by counsel in the negotiation and execution of the agreement; that in such negotiation they did not come in contact, but that same was conducted through their respective counsel; that the defendants in error did not know of their interests in the real estate in controversy; that there had been controversy about the existence or non-existence of certain personal property; that the plaintiff in error did know of the existence of the interest of the defendants in error in the property in controversy; and that the agreement was made for the purpose of terminating all litigation and all controversies between the parties and for the settlement of the estate of Fleetwood Court-right, Sr.
 

 The evidence disclosed no confidential or fidu
 
 *556
 
 ciary relationship between the plaintiff in error and the interested defendants in error, no manifestations of her exercising a dominating influence over them by reason of her relationship to them as stepmother or step-grandmother, nor were the circumstances such as to support an inference of such; nor did the evidence disclose that plaintiff in error concealed any of the evidence of title of defendants in error to the property, or that she possessed any knowledge of their title to the property which she did not obtain from the public records, which were equally available to them; and the only ground upon which a charge of fraud and deceit could be based would be that she did not admonish the defendants in .error that it would be an exercise of wisdom on their part to examine such records.
 

 A letter was introduced written by one Harley E. Burns, an attorney of plaintiff in error, to Judge Marriott, an attorney of the interested defendants in error. Because much relied upon by the interested defendants in error, it is incorporated here in full:
 

 “Columbus, Ohio, October 22, 1919.
 

 “Hon. Prank M. Marriott, Attorney at Law, Delaware, Ohio — My Dear Judge: In accordance with your request I am putting on paper a memorandum of the agreement arrived at between you and me at your office in Delaware, Ohio, this afternoon, settling all controversies between your clients, the Freshwater and Price heirs of Fleetwood Court-right, Sr., on the one hand, and my clients, Fleetwood Courtright, Jr., as administrator of his father’s estate, Fleetwood Courtright individually,
 
 *557
 
 his three sisters, Ruth, Nellie and Clyde, and Mrs. Conrtright, widow of Fleetwood Conrtright, on the other hand.
 

 “It was mutually agreed that Mrs. Courtright had a dower interest in the lands formerly owned by Fleetwood Courtright in Delaware and Union counties, as follows:
 

 Elmer Freshwater ........................................ 131 acres
 

 Orna Orr ...................................................... 200 acres
 

 'Stanley G-, Freshwater .................. 110 acres
 

 Prices .................................:.......................... 149 acres
 

 Total ...................................................... 490 acres
 

 “That in addition she has a dower interest in the homestead near Columbus, in the two or three cheap lots Courtright, Sr., left, as well as whatever personal property has been found or may be found,
 

 “It was also mutually agreed that under the deed of Fleetwood Courtright, Sr., the Freshwaters have a one-fifth interest in the homestead near Columbus, subject to Mrs. Courtright’s dower, and that the Freshwater and Price heirs of Fleetwood Courtright have a two-sixths interest in the two or three cheap lots and whatever personal property may belong to Fleetwood Courtright’s estate, after the payment of Mrs. Courtright’s dower therein, the expenses and attorney’s fees. Also subject to whatever claim Mrs. Courtright may have to the personal estate by reason of Mr. Courtright’s breach of his agreement to deed her the homestead.
 

 “The claim of my client, Mrs. Courtright, against your clients, for dower, based on her agreed willingness to accept. $150 per, acre as a basis of computing the dower, amounts to over $3,000.00.,
 

 
 *558
 
 “The claim of your clients (assuming that after long and expensive litigation they should be sucsessful in establishing the truth of their contentions and recover back into the Courtright estate the .$21,000 bonds held by Mrs. Stoltz in New York), amounts to:
 

 “Their full share of the face of the bonds $4,666.67 “Your highest figure for their share of all
 

 other property left by F. C., Sr..... 3,000.00
 

 “Total ■ $7,666.67
 

 “These figures are the full face of your claim and do not take into consideration the deductions for expenses of litigation, costs and attorney’s fees, which would be heavy.
 

 “In order to compromise and settle all controversies and claims on the part of your clients ,against mine and of my clients against yours, in any way growing out of or connected with the estate of Fleetwood Courtright, Sr., I on behalf of my clients and you on behalf of your clients agreed as follows:
 

 “Burns’ clients shall accept $T20 an acre as a basis for computing Mrs. Courtright’s dower, and on this basis Mrs. Courtright’s doAver amounts to $10,661.02, which sum she shall be paid by Marriott’s clients, less the sum of $4,500.00 which sum shall be allowed Marriott’s clients as payment for their respective interests (actual or claimed), in the real and personal property left by Fleetwood Courtright, Sr., leaving a net sum of $6,161.02
 
 *559
 
 which, shall be paid Mrs. Courtright by Marriott’s clients.
 

 “In return for the payment of this sum of $6,-161.02 to Mrs. Courtright, she shall quitclaim to the Freshwater and Price heirs of Fleetwood Court-right, all of her interest in the 490 acres of land in Delaware and Union counties, as well as the lot deeded to Mrs. Allison.
 

 “Marriott on behalf of his clients agreed that in consideration of Mrs. Courtright accepting from his clients the sum of $6,161.02 in full settlement of her dower claims in the land set out in the last paragraph above, that his clients would pay to Mrs. Courtright said sum of $6,161.02 in cash, and would deed to Mrs. Courtright all of their right, title and .interest in the homestead near Columbus and the two or three other cheap lots left by Mr. Court-right, Sr.
 

 “Also would deed to Fleetwood Courtright, Jr., enough land to make a line between Fleetwood Courtright’s land and Elmer Freshwater’s land run straight east to the river, the amount of land so to be deeded being estimated at one acre and one quarter acres:
 

 “Also that they shall assign and transfer to Mrs. Courtright all of their right, title and interest (actual or claimed) in the personal estate of Fleet-wood Courtright;
 

 “Also that all exceptions and objections to the administration of Fleetwood Courtright’s estate by the present administrator shall be withdrawn.
 

 “To the acceptance and carrying out of this agreement we pledge ourselves, under a penalty of withdrawing ourselves and our firms from the
 
 *560
 
 litigation in event onr respective clients refuse to perform the same.
 

 “Very truly yours, Harley E. Burns.”
 

 The common pleas court awarded partition to all of the defendants in error and dower to the plaintiff in error, and found upon the cross-petition of the plaintiff in error that the contract “does not in law or in equity convey to said Elizabeth J. Courtright the interest and title of the other signatories thereto in the property described in the petition herein or require them to convey said property to said Elizabeth J. Courtright; nor does said contract estop said signatories from asserting their right, interest and title in and to said property, or from receiving their distributive share therein.” Whereupon the cause was appealed to the Court of Appeals and there heard upon the pleadings, the transcript of the evidence in the trial court, and the argument of counsel. Whereupon that court awarded partition to the defendants in error, and upon the cross-petition of the plaintiff in error found as did the trial court and further found that the parties to the contract “never intended the same to effect in any manner the interest of the respective parties in the property herein sought to be partitioned; and to that extent reformation of said contract is allowed as prayed for in the answer of Olive Courtright Price, Oma Freshwater Orr, Stanley Freshwater and George E. Freshwater to the cross-petition of Elizabeth J. Court-right. ’ ’
 

 The evidence disclosed nothing which would throw any light upon the construction of this con
 
 *561
 
 tract other than certain facts which would have been presumed in the absence of a showing to the contrary, except the interpretation which the parties themselves gave to the contract at the time, the process of reasoning by which the aggregate sum to be paid was arrived at as disclosed by the letter from Attorney Bums to Judge Marriott and the fact that there was a controversy as to the extent of the personal estate of Fleetwood Court-right, deceased.
 

 While the Court of Appeals reformed the contract, such reformation was in effect nothing more than a construction, and neither court found the execution of the contract to have been secured by fraud or deceit.
 

 The matter, therefore, comes to this court purely upon a construction of the written contract entered into, aided by the construction the parties themselves put upon it, there being nothing in the record which would warrant the court in varying the terms of the contract.
 

 The most potent argument advanced by the defendants in error is that upon the death of Fleetwood Courtright, Sr., under the law of Ohio the. real estate of which he died seized immediately vested in his heirs at law, and thereupon no longer constituted a part of the estate of Fleetwood Court-right.
 

 Our laws of administration, which give an administrator dominion over the personal property and give to the heirs dominion over the real estate, subject to divestment by the administrator selling the real estate to pay the debts of the decedent, give rise to much uncertainty as to the sense in
 
 *562
 
 which the word “estate” is used by the parties to a contract such as the one here under consideration.
 

 In common parlance the entire property of every kind and description of which a decedent is seized at the time of his death is spoken of as his estate. However, in the administration of estates, the word “estate” does not usually include real estate, and it has been ably and forcefully argued in this case that the parties were dealing with the subject of administration. However, when the contract is analyzed in the light of the situation of the parties and the varied subject-matter dealt with in the contract, it must be admitted that the contract included a number of subjects which were not the subject of administration. For instance the claim of the plaintiff in error to dower in the real estate conveyed during the life of her husband is not a subject with which the administrator as such had any concern, or that had anything to do with the administration of the decedent’s estate, but was a controversy between the grantees of the decedent grantor and the widow of the grantor.
 

 The title to the lots in the city of Delaware about which there was apparently no controversy had by law vested in the heirs of the decedent, subject to the dower estate of the plaintiff in error. The title to the homestead in the city of Columbus, about which there was a controversy, might well come within the estate contemplated in administration, since the estate was being asked to respond for a breach of an- agreement upon the part of the decedent to deed it to the plaintiff in error.
 

 The controversy between the grantees, in the deeds executed to them by the decedent, with refer
 
 *563
 
 ence to division and party lines, mentioned in the letter from Barns to Judge Marriott, but not in the contract, was a controversy in which neither the plaintiff in error nor the administrator as such had an interest.
 

 The controversy with reference to recovering into the estate the sum of $21,000 worth of bonds, not specifically mentioned in the contract, was clearly a controversy involving the estate of the decedent to be administered.
 

 The signatories to the contract in the execution and carrying out of its terms executed deeds to the plaintiff in error for the real estate in the city of Delaware and the homestead and other real estate in the city of Columbus, which constituted, in so far as this record discloses, all the real estate of which the decedent died seized to which any of the parties hereto were entitled to possession, and, according to this record, all of the real estate of which the interested defendants in error knew, and they thereby placed their own construction upon the word “estate,” as including the real estate of which decedent died seized. In their effort to so draw the contract as to terminate all controversy, and to preclude future controversies, arising out of the interpretation of the contract, they so worded the contract that it became as to the word “estate” its own lexicographer, using the words “This agreement applies to all property of said estate, real, personal or mixed, wheresoever located, whether now known to the parties hereto, or hereafter discovered.” In this clause they not only clearly designated their understanding that real estate was contemplated as being a species of prop
 
 *564
 
 erty comprehended in the word “estate,” as they then used it, but also that the term comprehended the real estate of which they did not know as well as the real estate of which they did know.
 

 In another clause of the contract they provided, “if it is necessary to carry out the terms of this agreement that any or all of the above named parties shall execute and deliver a deed or deeds for real estate belonging to said estate, then and in that event each and all of the above parties hereby agree to sign, execute and deliver to the said Elizabeth Jane Oourtright deed or deeds for their interest in said real estate,” again clearly indicating their understanding that they were contracting with reference to the real estate of which Meet-wood Oourtright, Sr., died seized. Having, therefore, in the contract itself clearly defined the character, scope and extent of the property with regard to which they intended to contract, and having in that contract clearly indicated that they were using the word “estate” as comprehending real estate, and having by their free act executed deeds in conveyance of the real estate, in pursuance and performance of the terms of the contract, they made their own interpretation of the sense and scope in which they had used the word “estate,” and both that interpretation and the interpretation which tley had expressed in the contract being to the effect that they comprehended real estate in the vord “estate,” they can not now, in the light of subsequent events, be heard to say that they did not mean the thing they had both by word and act said they did mean. While it may be admitted that the minds of the parties did not meet upon the dis
 
 *565
 
 position of this particular property, their minds did meet upon the subject of the disposition of after-discovered property of the estate, real, personal and mixed, and settlement of such was made with a view to completing their title to the real estate of which they then knew and of which they had possession. The parties, being of full age and dealing with each other at arm’s length, had a right to contract with reference to any property to which or in which they had a vested title.
 

 There being no proof of fraud in this record, and no proof of a confidential or fiduciary relation, to avoid giving effect to the contractual obligation of the signatories to the contract this court would be compelled to enter the field of relieving against unwise and improvident contracts upon the sole ground that they are unwise and improvident. .
 

 The judgment of the Court of Appeals, in so far as it adjudged that the contract be reformed, and that the contract is ineffective to convey to plaintiff in error the equitable title of Olive Courtright Price, George E. Freshwater, Stanley Freshwater and Oma Orr in the premises here in controversy, is reversed, and judgment is awarded the plaintiff in error and the cause remanded to the Court of Appeals for further proceedings in accordance herewith.
 

 Judgment
 
 reversed,
 

 Marshall., C. J., Jones, Matthias, Day and Allen, JJ., concur.
 

 Wanamaker, J., not participating.