Construction Advancement Program of North Central and East Central Ohio et al., Appellants, *v.* A. Bentley & Sons Co., Appellee.

[Cite as C. A. P. v. A. Bentley & Sons, (1975), 45 Ohio App. 2d 13.]

(No. 7784—Decided March 7, 1975.)

14

*Messrs. Knepper, White, Richards & Miller,* for appellants.

*Cline, Bischoff & Cook, Co., L. P. A.* and *Mr. Rolland W. Dings,* for appellants.

*Mr. Justice G. Johnson, Jr.,* and *Mr. John G. Mattimoe,* for appellees.

Brown, P. J. This appeal is taken by the plaintiffs, The Construction Advancement Program of North Central and East Central Ohio, and the Board of Trustees of Construction Advancement Program of North Central and East Central Ohio, herein designated as "cap," from a final judgment dismissing the Complaint after a trial on the merits. cap sought to hold defendant A. Bentley & Sons Co., the appellee, obligated under certain collective bargaining agreements to contribute three cents to the cap fund for each hour worked by each union employee of defendant on construction work performed in Ottawa County in 1972 on the Davis-Bessee Nuclear Power Station.

cap is a trust currently funded pursuant to collective bargaining agreements between the Ohio Contractors Association and local unions, including Local 480, the Laborers International Union of North America, AFL-CIO, and Local 2239, United Brotherhood of Carpenters and Joiners of America, a member of Lake Erie District Council of Carpenters. These local collective bargaining agreements provided for the payment of three cents for each hour worked by members of the two unions to cap, by employer-contractors who signed such agreements. Defendant is not a member of the Ohio Contractors Association and did not sign the local collective bargaining agreements.

The local union supplied union construction workers to defendant by reason of defendant's contracts with two international unions. Local 480 and Local 2239 supplied these union workers for the Ottawa County construction work to defendant pursuant to its national agreements with Laborers International Union of North America, AFL-CIO, and with United Brotherhood of Carpenters

and Joiners of America. Defendant refused to pay anything to CAP.

The contract provisions between the Ohio Contractors Association and Locals 2239 and 480 which established CAP funding rights provide:

"The Employer and the Union agree to and approve the establishment of a program to promote the common good of The Construction Industry in the North Central and East Central Ohio Area by providing financial support for activities which may include but not necessarily be restricted to, the study and service of:

"(A) Public Relations.

"(B) Public Education as pertaining to the Construction Industry.

"(C) Market Development.

"(D) Protection of legitimate markets.

"(E) Personnel Practices and Labor Relations, including:

1. Promotion of Safety.

2. Standardization of contracts and practices.

3. Promotion of stability in personnel practices and labor relations.

4. Adjustment and arbitration of grievances.

5. Settlement of jurisdictional problems.

6. Apprenticeship training programs.

7. Health and welfare funds for Employees.

8. Pension funds for Employees.

9. Vacation funds for Employees.

"(F) Collection and distribution of information from and to all segments of the Construction Industry and related groups or authorities.

"The Employer and the Union agree to and approve the establishment of the Construction Advancement Program of East Central Ohio area by a Declaration of Trust dated May 10, 1964, as amended to become the North Central and East Central Construction Advancement Program, a copy of which is available for inspection by the parties at the office of the Trustees and which is included herein by reference and made a part hereof Each Employer cov-

ered by this Agreement shall pay 3c for each hour worked by each employee within the bargaining unit."

CAP contends that defendant is bound by the terms of this agreement, even though defendant is not a party to the contract which established the obligation to pay into CAP. It claims that the basis of this liability are the terms of defendant's contracts with the international unions which bind defendant to the provisions in the contracts between the Ohio Contractors Association and the two local unions, Local 480 and 2239.

The pertinent provisions of defendant's contracts with the international unions, which plaintiff contends require defendant to contribute to CAP are as follows.

The contract of the United Brotherhood of Carpenters and Joiners of America provides:

"The Company agrees * * * to work the hours, pay the wages and *fringe benefits* and observe the lawful *working conditions* * * * established or agreed upon by the United Brotherhood of Carpenters and Joiners of America and the recognized agency of the locality in which any work of the company is being done, with respect to journeymen carpenters employed by the company.

"No change is to be made in the hours, wages and other conditions established or agreed upon in any locality." (Emphasis added.)

The contract of the Laborers International Union of North America, AFL-CIO, provides:

"Section 1. Subject to the provisions of this Agreement, the hourly rates of pay, overtime, *working conditions*, travel or subsistence allowances, *and all fringe benefits* shall be those established through collective bargaining between the appropriate Local Union and/or District Council and the local contractors in the area where the particular job of the Employer is located. * * *

"Section 4. The Employer agrees to become party to *the standard fringe benefit trust agreements* which have been entered into between local contractors and the Local Union and/or District Council involved.

"Section 5. The Employer agrees to make timely

payments into all *fringe benefits* funds negotiated and established under the applicable Local Union and/or District Council collective bargaining agreement." (Emphasis added.)

CAP puts particular emphasis upon the use of the words, "working conditions" and "fringe benefits." With reference to this, the trial court, in its findings of fact, stated:

"In view of the testimony of Thomas J. Arcanti, Regional Manager for the Laborers' International and one of the union negotiators of the local laborers' agreement, and the other evidence adduced, the Court finds that CAP conferred no benefits on the members of the union and that CAP is not a working condition or a fringe benefit for the union members but rather, considering the testimony of Mr. Rothermund, that it is a typical industry promotion fund. While it may confer some incidental benefit on union members or on the general public, it is primarily for the benefit of the contractor."

The trial court also stated, in its "conclusions of law":

"CAP is not a working condition or fringe benefit and is not otherwise encompassed within the obligations assumed by Bentley under the national agreement. Bentley, therefore, has no obligation to observe the CAP provisions of the local agreements and is not bound thereby."

Unless CAP established that the contractual obligation to pay "fringe benefits" or observe "working conditions" includes an obligation to pay to CAP, plaintiffs have failed to prove any claim for relief against the defendant. Although plaintiffs claim that they are third-party beneficiaries of "fringe benefits" under the national agreements between the defendant contractor and the international unions, the parties to the national agreements did not intend any third-party benefit to flow to plaintiff. A third person not a party to a contract has no rights as a third-party beneficiary where the contracting parties did not intend to create third-party beneficiary rights. *Robins Dry Dock & Repair Co.* v. *Flint* (1927), 275 U. S. 303; *German Alliance Ins. Co.* v. *Home Water Supply Co.* (1912),

226 U. S. 220; 11 Ohio Jurisprudence 2d 426, Contracts, Section 177; 17 American Jurisprudence 2d 727, Contracts, Section 304.

One party to a contract does not automatically become bound to a second contract executed by a third party and a party to the original contract, unless the second contract is wholly or partially incorporated into the first contract. Local 480, Laborers, and Local 2239, Carpenters, are two unions which exist separately from the International Unions. 48 American Jurisprudence 2d 109, Labor and Labor Relations, Section 82.

The only contractual language of incorporation which is relevant in the present case concerned working conditions and fringe benefits. Plaintiffs admit that defendant is not a party to the local agreements and that CAP is not a party to the national agreements. Through its national agreements, defendant agreed to become a party to standard "fringe benefit" contractual provisions which are established through the local agreements. Defendant has paid into various fringe benefit funds, but has not paid anything to CAP. If CAP is not a fringe benefit fund, defendant has not agreed to make payments into it. Moreover, the term "working conditions" would not embrace an obligation to pay into a CAP fund.

The term "fringe benefit" is ambiguous and subject to different interpretations. Accordingly, the trial court properly admitted evidence to show the sense in which the words were used by the parties to the agreement. *In re Fulk* (1940), 136 Ohio St. 233; *Courtright* v. *Scrimger* (1924), 110 Ohio St. 547; *State* v. *Mullin* (1908), 78 Ohio St. 358; Restatement, Contracts, Section 235; 11 Ohio Jurisprudence 2d 385, Contracts, Section 140. If the intention of the parties cannot be determined from the language used, it may be shown by the interpretation ordinarily given the ambiguous words by persons in that trade or business, *Ajax Petroleum Products Co.* v. *Blake* (1953), 70 Ohio Law Abs. 1, headnote 1, and through the actions of the parties which manifest their understanding of the agreement. *Grundstein* v. *Suburban Motor Freight, Inc.*

(1952), 92 Ohio App. 181, 186-188; 4 Williston, Contracts (3d ed.), Section 614; 17 American Jurisprudence 2d 642, Contracts, Section 250; 17A Corpus Juris Secundum 147, Contracts, Section 302(1).

Thomas Arcanti, a witness called by defendant, testified that the national agreement does not require contributions to CAP and his testimony regarding the international union's acquiescence in defendant's non-payment was admissible to prove the interpretation given the ambiguous language by one party to one national agreement. Arcanti is a labor representative of Laborers International Union of North America and was qualified as an expert. Furthermore, the evidence was admissible to rebut the earlier testimony on the same matter by Thomas Price, a witness called by plaintiff. 21 Ohio Jurisprudence 2d 212, Evidence, Section 201.

The trial court, as the trier of the facts, determines the credibility of the witnesses. The record supports the trial court's determination that the intent of the parties was not to include CAP as a fringe benefit or a working condition. Furthermore, there is judicial precedent that payments into a trade association fund will not be required unless provided specifically in the contract. *Wagor* v. *Cal. Kovens Const. Corp.* (1967), 382 F. 2d 813, cert. den. 390 U. S. 952.

There was no error in the admission of evidence to which plaintiff made objection. The trial court properly interpreted the contracts relevent to this case and properly applied the provisions of such contracts to the facts proven. Therefore, all six assignments of error are not well taken. The judgment of the Court of Common Pleas dismissing the complaint is affirmed.

*Judgment affirmed.*

WILEY and POTTER, JJ., concur.