MIDWESTERN INDEMNITY COMPANY, APPELLANT, *v.* RELIANCE INSURANCE COMPANY ET AL., APPELLEES.

(No. 1200—Decided March 17, 1988.)

*Freund, Freeze & Arnold* and *Stephen V. Freeze,* for appellant.

*Bieser, Greer & Landis* and *Gregory P. Dunsky,* for appellees.

BROGAN, J. The plaintiff-appellant, Midwestern Indemnity Co. ("Midwestern") appeals from a declaratory judgment entered by the Darke County Court of Common Pleas finding the appellant to be the primary insurer for Charles F. Stroupe, who was involved in a motor vehicle accident.

On August 14, 1983, Stroupe was driving a 1982 Mack tractor owned by Harold J. Pohl. As a result of his alleged negligent operation of the tractor, Stroupe collided into four motorcyclists. The four motorcyclists, Mr. and Mrs. Black and Mr. and Mrs. Bayham, were injured as a result of the accident. The Blacks filed suit against both Stroupe and Pohl. The case was settled out of court, and the Blacks received $2,000. During the course of the Blacks' dispute, Pohl's insurer, Midwestern, provided the funds for the defense and for the $2,000 settlement.

At the time of the accident, the 1982 tractor driven by Stroupe was on a lease from its owner, Pohl, to a common carrier, Shenandoah Motor Express, Inc. ("Shenandoah"). Pohl was insured by the appellant, while Shenandoah was insured by Reliance Insurance Co. ("Reliance"). After representing Pohl and Stroupe in the Blacks' case, Midwestern instituted this action seeking a declaratory judgment as to which insurer should be held responsible for defending Stroupe and Pohl. Subsequent to the filing of the declaratory judgment action, the Bayhams filed a personal injury claim against Stroupe and Pohl. The appellant then amended its complaint to include a determination as to which insurance company should be held responsible to defend Stroupe and Pohl in the Bayhams' case. Thus, this case presents the classic question of which insurance company is primarily liable to a third party when an independent contractor (Pohl) leases a tractor and driver (Stroupe) to a common carrier (Shenandoah) which places its ICC and PUCO permits on the trailer. Under the facts of this case, the trial court granted summary judgment in favor of Reliance, and declared that the independent contractor's insurer, Midwestern, was primarily liable. Midwestern appeals from the summary judgment, and it raises the following as its sole assignment of error:

"The trial court erred in denying plaintiff-appellant Midwestern Indemnity Company's motion for summary

judgment and in granting the summary judgment motion of defendant-appellee, Reliance Insurance Company."

The appellant raises three specific arguments in support of its assignment of error:

"1. The trial court erred in its determination that rules and regulations promulgated by the Interstate Commerce Commission do not have the force and effect of federal law.

"2. The trial court erred in its determination that ICC Regulation 49 C.F.R. 1057.12 does not mandate that Shenandoah has exclusive possession, control, and complete responsibility for leased equipment thereby requiring Shenandoah's insurance policy to provide primary coverage.

"3. The trial court incorrectly determined that the driver of the leased vehicle was not acting exclusively in the business of Shenandoah at the time of the accident."

The ' appellee, Reliance, agrees with the appellant, Midwestern, that the trial court erred in stating that the ICC regulations do not have the force and effect of federal law. In his decision the trial judge stated:

"An examination of the policies and the authorities cited reveals that Midwestern has the primary coverage for this accident. Although the ICC regulations require the carrier-lessee to maintain adequate insurance to protect the public from the negligent operation of the leased vehicle, this regulation *does not make the carrier's policy applicable to all the actions of the driver*. The regulation represents ICC policy: it *should not be elevated to the status of substantive federal law*." (Emphasis added.)

While we find that the trial court erred in stating that the regulation does not have the effect of federal law, we agree with its ultimate determination that the regulation does not apply to every action of a driver. For that reason, as expanded on below, we affirm the trial court's judgment and hold that the court reached the proper result even if it applied the wrong reason. See *Van Cobb* v. *Sudzina* (App. 1956), 78 Ohio Law Abs. 33, 151 N.E. 2d 385.

The appellant next contends that ICC regulation, Section 1057.12, Title 49, C.F.R. places a carrier in exclusive possession, control, and complete responsibility for leased equipment, and that the carrier's insurer, the appellee, should have provided the primary insurance coverage in this case. The appellant also contends that the trial court erred by not holding that Stroupe was acting within the exclusive business of Shenandoah at the time of the accident. We will address these arguments together due to their similarity and interrelationship.

Section 1057.12, Title 49, C.F.R. states in pertinent part:

"(c) *Exclusive possession and responsibilities* — (1) the lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and the use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease."

On May 13, 1983, Pohl, as contractor, and Shenandoah, as carrier, entered into a contract whereby Shenandoah agreed to lease a tractor and driver from Pohl. The following are excerpts from that contract:

"10. The Carrier (Shenandoah) shall have exclusive possession, control, and use of the equipment with driver(s) for the duration of the lease. The carrier shall assume complete responsibility for the operation of the equipment with driver(s) for the duration of the lease.

"* * *

"25. It shall be the legal obligation of the carrier to maintain insurance coverage for the protection of the public pursuant to Interstate Commerce Commission Regulations 49 U.S.C. 10927.

"* * *

"27. The Contractor shall maintain, at its expense, sufficient insurance coverage (bob-tail coverage) satisfactory to the Carrier, on the equipment used by it in the performance of this contract. The Contractor shall furnish a copy of the insurance certificate to the carrier."

As required by Section 1057.12 (c)(1), Title 49, C.F.R., the lease properly places exclusive possession and control with the carrier, Shenandoah. Pohl's insurer, Midwestern, now claims that the language of the lease and Section 1057.12(c)(1) place the liability with Shenandoah's insurer, Reliance.

The trial court, however, noted in its decision that "Shenandoah, although given exclusive possession and control of the unit under the lease, was never advised that Stroupe was using the tractor to drive back and forth to work." In his deposition, Pohl testified that he permitted Stroupe to drive the tractor home on weekends. Pohl also stated that he did not advise Shenandoah or was not aware if Shenandoah knew of this agreement between Pohl and Stroupe. Stroupe testified that Bill Weeks, Stroupe's dispatcher, was aware that Stroupe took the tractor home on weekends because Stroupe did it for years. Stroupe stated that Weeks worked as a dispatcher for Subler Transfer Co. somewhere between 1969 and 1974 when Stroupe drove for it. Stroupe stated that during that period, Weeks knew Stroupe drove the tractor home on weekends, and that he followed the same practice once he started driving for Shenan-

doah. Edward J. Subler, President of Shenandoah, and William Weeks, Shenandoah's dispatcher, both testified that they did not consent to or know of Pohl's agreement permitting Stroupe to drive the tractor home on weekends.

The trial court then looked to Paragraph 27 of the lease agreement — the so called "bob-tail" coverage provision. The trial court stated, "[i]f Shenandoah's coverage was primary while Stroupe was driving the truck to and from work, there would be no need for any 'bob-tail' coverage. The parties obviously anticipated that, under some circumstances, and despite the language of the lease, Shenandoah would not be in exclusive control, use or possession of the leased unit." Although this provision is of extreme significance to the resolution of this case, the parties failed to define the term "bobtailing" in the lease. We are left then to determine how the parties intended to define "bobtailing." See, e.g., Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St. 2d 241, 7 O.O. 3d 403, 374 N.E. 2d 146, paragraph three of the syllabus; Courtright v. Scrimger (1924), 110 Ohio St. 547, 144 N.E. 294, paragraph two of the syllabus.

Pohl defined "bobtailing" as having "a tractor only to go from point A to point B." Although this does not aid us much in determining what "bobtailing" is or explain when the bobtailing coverage would apply, Pohl did provide the following testimony:

"Q. If, in fact, at the time this accident occurred, Charlie was driving the tractor alone to pick up a trailer, would Charlie have been bobtailing, as you understand the term bobtailing?

"A. Yes.

"* * *

"Q. And I'm simply asking your understanding. I'm not asking for any legal conclusions, simply your under-

standing if Charlie's driving his tractor alone to pick up a trailer and he has an accident, is it your understanding that the accident is covered by your bobtailing insurance?

"A. My understanding is if he's not under direct dispatch and he is bobtailing, then my insurance company is responsible if he has an accident. But if he was bobtailing from point A to point B, and is under direct dispatch by Shenandoah Motor Express, he is in Chicago and dispatch tells him to bobtail from Eckridge Meat Packing to another company across town under direct dispatch, then their insurance coverage would be responsible."

Later on, Pohl stated:

"That was an understanding between Charlie and I [sic], that whenever he dropped off the trailer in my lot, he was going to bobtail home for the weekend and when he was getting ready to go back to work on Sunday he would bobtail back to my property and pick up the trailer and go to Chicago."

It is clear from this testimony that Pohl obviously felt that Stroupe was bobtailing at the time of the accident, and that Pohl's insurance company, the appellant, was responsible for the primary insurance coverage under the facts of this case.

Shenandoah did not dispute this definition of "bobtailing" given by Pohl. Thus, we concur with the trial court's determination that the parties' intended definition of "bobtailing" encompassed the circumstances surrounding Stroupe's accident.

Nonetheless, Midwestern states that its policy does not apply because Shenandoah, the carrier, was in exclusive control of the tractor during the entire term of the lease, including the time of this accident. In support of this argument, Midwestern relies on the "Truckmen's Endorsement" provision in its policy. The Truckmen's Endorsement provides in pertinent part:

"1. The insurance provided herein for bodily injury or property damage liability, medical payments, uninsured motorist and any personal injury protection (or other 'no fault' injury or damage to which this policy may be applicable), as the case may be does not apply while: * * *

"b. An owned automobile or a temporary substitute automobile is maintained or used (i) under orders from or after being dispatched by any trucking company or lessee of such automobile, or (ii) under any permit, authority or operating rights granted by any governmental agency to operate as a common or contract carrier including the insured's own such permit, authority or rights.

"2. Each paragraph of this policy captioned to indicate that such paragraph relates to other insurance or excess insurance is hereby deleted and replaced, respectively, by the following: all insurance under this policy shall apply only as excess insurance over any other similar insurance available to the insured and applicable to an owned or temporary substituted automobile as primary insurance and this insurance shall then apply only in the amount by which the applicable limit of liability under this section exceeds the applicable limit of liability of such other insurance."

Midwestern contends that Stroupe was under Shenandoah's control at the time of the accident because he was en route to the trailer yard where he was going to pick up the trailer and proceed to Chicago. It claims that the dispatcher told Stroupe to be in Chicago after midnight on the Sunday of the accident, and that Stroupe was on his way to hook up the trailer and proceed to Chicago when the accident occurred. Thus, Midwestern claims that Stroupe was "dispatched" by the Shenandoah

"trucking company" and, therefore, remained under Shenandoah's control and responsibility.

We reject Midwestern's contention. First, we note that a majority of the federal courts have held that the "responsibility and control" regulations (Section 1057.12[c][1], Title 49, C.F.R.) imposed by the ICC do not place exclusive liability upon the lessee's insurer; rather, the court should consider the applicable state laws and the express terms of the parties' contracts. *Carolina Cas. Ins. Co.* v. *Insurance Co. of North America* (C.A. 3, 1979), 595 F. 2d 128; *Allstate Ins. Co.* v. *Liberty Mut. Ins. Co.* (C.A. 3, 1966), 368 F. 2d 121; *Wellman* v. *Liberty Mut. Ins. Co.* (C.A. 8, 1974), 496 F. 2d 131; *American General Fire & Cas. Co.* v. *Truck Ins. Exchange* (D. Kan. 1987), 660 F. Supp. 557.

Stroupe testified that he received his dispatch orders on Friday, August 12, 1983, that he was off duty for the weekend, and that he was involved in an accident on August 14, 1983, as he was reporting to work. Pohl testified that he did not believe that Stroupe was dispatched (on duty) until he hooked up the trailer and departed for Chicago. We agree that Stroupe was not dispatched until he hooked up the trailer and was off to Chicago. The evidence establishes that Shenandoah did not authorize Stroupe to drive the tractor home, that Stroupe was indeed bobtailing, and that he was not under direct dispatch at the time of the accident; therefore, we find that Stroupe was not under the exclusive control of Shenandoah, nor was he working within the exclusive business of Shenandoah at the time of the accident.

It is well-established law in Ohio that a carrier is not *per se* liable when it leases a truck and driver under the guidelines of the ICC, and the driver negligently causes an accident. *Thornberry* v. *Oyler Bros., Inc.* (1955), 164 Ohio St. 395, 58 O.O. 189, 131 N.E. 2d 383. In *Thornberry,* the Ohio Supreme Court held:

"Where a common carrier of freight by motor vehicle is the possessor of Public Utilities Commission and Interstate Commerce Commission permits, leases from another a tractor with a driver, combines the tractor with its own trailer, attaches its permit plates to the unit, sends the unit from its place of business to a city in another state with a load of freight, and instructs the driver to return to the carrier's place of business, after unloading the freight at its destination, either with return freight for the carrier, if any, or with the unit empty, and where the driver after unloading the freight takes the tractor-trailer unit, represents it as his own and contracts with another party to haul freight for him to a point not covered by the permits, and where such action of the driver is for his own benefit and profit, without the knowledge, consent or participation of the original carrier, and, while on his way to deliver the freight he is hauling for his own benefit, the driver negligently causes an accident, the original carrier is not liable for his conduct, even though the accident occurs on a road upon which the driver would be traveling had he not departed from the original carrier's instructions." *Id.* at paragraph three of the syllabus.

Although *Thornberry* involved a situation where the driver disobeyed the carrier's orders, the case establishes the principle that a carrier will not be liable for a leased driver's accident when the driver is not acting within his scope of employment. We find that *Thornberry* is applicable to this case, and we hold that Reliance is not primarily liable because Stroupe was not acting exclusively within the scope of Shenandoah's business. We further find that the trial court proper-

ly found Midwestern to be the primary insurer in this case.

The appellant's sole assignment of error is overruled, and the trial court's judgment is affirmed.

*Judgment affirmed.*

KERNS, P.J., and WOLFF, J., concur.