[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Toledo Municipal Court, Small Claims Division, which entered judgment for appellee, MatchMaker International ("MatchMaker"). For the reasons stated herein, this court affirms the judgment of the trial court.
The following facts are relevant to this appeal. On May 2, 2001, appellant, Katherine M. Widlar, filed a complaint against MatchMaker seeking a refund of money appellant had paid MatchMaker. According to the complaint, appellant entered into a written contract with MatchMaker for its social referral services on December 26, 2000; appellant paid $1,495 for MatchMaker's social referral services; appellant sent a "Notice of Cancellation" to MatchMaker on January 8, 2001; appellant alleged that MatchMaker did not provide the minimum of reasonable service under a dating referral service. MatchMaker filed an answer on May 10, 2001; MatchMaker denied that appellant provided timely notice of cancellation. A hearing was held before a magistrate who entered judgment for MatchMaker on August 2, 2001.[1] MatchMaker and appellant filed objections to the magistrate's decision. On September 24, 2001, the trial court found the objections not well-taken. Appellant filed a notice of appeal on October 25, 2001. In December 2001, this court remanded this case to the Toledo Municipal Court for the trial court to enter a final judgment pursuant to Civ.R. 54(A). On January 2, 2002, the trial court entered a final judgment in favor of MatchMaker. On January 10, 2002, this court reinstated appellant's appeal.
Appellant sets forth the following assignment of error:
 "The Municipal Court Erroneously Adopted The Magistrate's Conclusion That The Notice Of Cancellation Was Not Sent Within The Three Day Period Permitted By R.C. § 1345.43."
In her assignment of error, appellant argues that the trial court erred in concluding that she did not cancel the contract within the time period provided by R.C. 1345.43. Appellant argues her first service under the contract was on January 4, 2001, and that, pursuant to R.C. 1345.43, she had three business days from January 4, 2001, to cancel the contract. This court finds no merit in this assignment of error.
The contract at issue in this case provided, in part:
 "1. Client acknowledges this facility (office) is open for business and service is available. By executing this agreement client hereby acknowledges purchasing the services of interviewing, testing, evaluation, and processing by MatchMaker International. Client has a three day right of cancellation and a right of cancellation in the event of death, disability or relocation. For a full explanation of when and how these rights may be exercised, and what financial liability client may have after cancellation, client should read the attached notice of cancellation and the Terms and Conditions section on the back of this agreement. Service to Client commences only after the total fee is paid unless authorized by MatchMaker International. Client may cancel or terminate this Contract in writing by certified mail, return receipt requested, prior to the first referral being postmarked and mailed to Client and if so canceled, Client is liable for a $400 fee to cover costs of Client interviewing, testing and evaluation by MatchMaker International. This fee represents the Client's full and final liability to MatchMaker International in regard to pre-processing procedures. Except for Schedule C, Client agrees that upon receipt of the first referral by mail, Client is not entitled to any refund in the event of cancellation or termination by the Client, and that the Client will be fully liable for the entire membership fee. Any changes, alterations, modifications or special circumstances concerning this cancellation policy must be in writing and signed by the Client and an authorized representative of MatchMaker International in order to be enforceable. I, (signature of Katherine Widlar appears), have read, understand and accept the refund policy and terms of paragraph 1.
 "2. Client agrees that the information provided above must be first examined, evaluated and accepted before referrals commence. Client understands that the entire procedure of examination, evaluation and processing could take one week to complete. Thereafter, Client will be provided referrals in accordance with Schedule A, Schedule B or Schedule C below:
"* * *
 "Schedule C: Client will receive a minimum of three (3) referrals over a period of time not to exceed one (1) year of active status. If Client has received no referrals in the first six (6) months of active status, Client will be entitled to a full refund. If Client has not received the minimum of referrals expressed in the Contract within twelve (12) months of active status, Client is entitled to a refund of one half (1/2) of the original fee." (Emphasis in original.)
Appellant's initials appear by Schedule C, one of the three options offered; Schedule C is also circled on the contract. In another paragraph of the contract concerning a "hold feature" which allowed for suspension of service, the word "unlimited" regarding the number of months of hold is handwritten in a space within the paragraph. Appellant's initials appear by this paragraph. Appellant's initials also appear by the following handwritten phrase which appears above the membership fee: "confidential do not disclose fee/membership."
The Terms and Conditions section, referred to in the first paragraph of the contract, appears on the reverse side of the contract, typed in a larger font size than the rest of the contract. The Terms and Conditions section provides:
 "4. First Service Client acknowledges this MatchMaker International facility is open for business and as such the parties agree that first service or service under this contract shall be deemed to be and is available on the date that client signs this contract."
In regard to the Prepaid Entertainment Contract Act, R.C. 1345.41 et seq., Ohio Consumer Law (2001 Ed.), § 4.26, 175, states:
 "Except where facilities or services are not available at the time the contract is signed, consumers have the right to cancel all other transactions covered by the Act, for any reason, until midnight of the third business day after the date on which the first service under the contract is available. (Footnote omitted.) Neither the date the contract is signed nor the date on which the consumer actually receives the first service is controlling, unless those dates are the same as the date that the first service is available. In health spa cases it is not unusual to sign the contract and receive the first service on the same day. However, in weight reduction clinics it is commonplace not to receive any service until several days after the contract has been signed. In many cases the definition of `first service' becomes a serious issue in determining when the time period begins to run." (Emphasis added.)
In the case sub judice, the contract provided that the "first service" "shall be deemed to be and is available on the date that client signs this contract." Thus, the contract specifically defined "first service." Furthermore, appellant, a college graduate with four additional years of post-graduate education, signed that she acknowledged that MatchMaker's office "is open for business and service is available."
Although the trial court's decision in favor of defendant was correct, it reached the correct judgment for the wrong reason. The trial court found that appellant had not canceled the contract within three days of the first service, after concluding that the first service was available on January 4, 2001. However, the contract specifically provided that the "first service" "shall be deemed to be and is available on the date that client signs this contract." The contract further provided that the MatchMaker's office "is open for business and service is available." Thus, pursuant to the contract, the "first service" was available on the date appellant signed the contract, December 26, 2000.
It has long been the law in Ohio that "a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." State ex rel. Carter v. Schotten
(1994), 70 Ohio St.3d 89, 92. See, also, Cook v. Cincinnati (1995),103 Ohio App.3d 80, 90. Thus, when a trial court has stated an erroneous basis for its judgment, an appellate court must affirm the judgment if it is legally correct on other grounds, that is, it achieves the right result for the wrong reason, because such an error is not prejudicial.State v. Payton (1997), 124 Ohio App.3d 552, 557.
This court is not unmindful that this result may seem harsh given the amount of money appellant paid for the social referral service and/or appellant's dissatisfaction with the social referral service rendered. However, in general, competent adults are bound by that to which they agree, provided it is not otherwise illegal. This court should not relieve a party from the operation of a contract merely because the contract is unwise or foolish.[2] 17A American Jurisprudence 2d (1991) 294, Contracts, Section 295. As noted in the concurrence in Bielat v.Bielat (1967), 87 Ohio St.3d 350, 363, (Douglas, J. and Resnick, J., concurring):
 "In Blount v. Smith (1967), 12 Ohio St.2d 41, 47, we said that `[t]he right to contract freely with the expectation that the contract shall endure according to its terms is as fundamental to our society as the right to write and to speak without restraint. Responsibility for the exercise, however improvident, of that right is one of the roots of its preservation.
 "`A rule of law which would sanction the renunciation of a bargain purchased in freedom from illegal purpose, deception, duress, or even from misapprehension or unequal advantage * * * leads inexorably to individual irresponsibility, social instability and multifarious litigation.'" (Parallel cites omitted.)
See, also Courtright v. Scrimger (1924), 110 Ohio St. 547, 565 ("to avoid giving effect to the contractual obligation of the signatories to the contract this court would be compelled to enter the field of relieving against unwise and improvident contracts upon the sole ground that they are unwise and improvident.")
Accordingly, appellant's single assignment of error is found not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J. and Mark L. Pietrykowski, P.J., CONCUR.
Melvin L. Resnick, J., dissents.
[1] {a} The magistrate made the following findings of fact:
 {b} "1. Plaintiff entered into the contract with defendant, MatchMaker International, for introduction-referrals. Plaintiff entered into the contract and paid, in full, on December 26, 2000.
 {c} "2. Plaintiff received the first introduction-referral on January 4, 2001 which was postmarked January 3, 2001.
 {d} "3. Paragraph 1 of the contracts [sic] states in part `client may cancel * * * this contract * * * prior to the first referral being postmarked and mailed.'
 {e} "4. Plaintiff signed a Notice of Cancellation on January 8, 2001 which was received by the defendant, MatchMaker, on January 9, 2001."
The magistrate made the following conclusions of law:
 {f} "1. The first service available under the contract was the introduction-referral and was available on January 4, 2001.
 {g} "2. Plaintiff did not cancel the contract as provided by the terms of the contract. The contract could be canceled prior to January 4, 2001 per Paragraph 1 of the contract. This did not happen.
 {h} "3. The plaintiff by statute (O.R.C. 1345.43) had three (3) days to cancel after the first service was available. The first service was available on January 4, 2001. The Notice of Cancellation was signed and delivered more than three (3) days later.
 {i} "4. The plaintiff failed to state a claim for which relief may be granted against defendant.
{j} "5. Judgment for defendant."
[2] {k} Although courts may release a party from an unconscionable contract, often called a contract of adhesion, this court finds this is not such a contract. In Ohio Univ. Bd. of Trustees v. Smith (1999),132 Ohio App.3d 211, 220, the Fourth Appellate District, in determining that a contract was not unconscionable, stated:
 {l} "`A contract is unconscionable if it did not result "from real bargaining between parties who had freedom of choice and understanding and ability to negotiate in a meaningful fashion." (Citation omitted.) The crucial question is whether "each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print * * *?" (Citation omitted.)' Lake Ridge Academy v. Carney
(1993), 66 Ohio St.3d 376, 383. (Parallel cites omitted.)
 {m} "There was no absence of a meaningful choice on Smith's part. The contract itself contained a place to sign if the student wished to be considered for admission without being required to work in Ohio. Furthermore, Smith was free to apply to other medical schools in Ohio and elsewhere. The contract as a whole in this case is not unconscionable. Smith was a junior in college when he signed the contract. The parties appear to have dealt with each other at arm's length and there is no evidence of coercion or duress. The damages clause is printed on the contract in the same print size as the other clauses; it is legible and in plain English. In short, we see no evidence that Smith was pressured into signing a contract the terms of which he could not easily see and understand. There being no genuine issue of material fact, the contract at issue is not unconscionable as a matter of law."
The contract at issue involved a college educated individual, in an arm's length transaction which resulted in a contract in which meaningful choices on her part are evidenced by handwritten choices and/or her initials. Appellant was "free to apply to other" social referral services and the terms of the contract are "legible and in plain English." Appellant indicated that she understood the terms of the contract and the important terms were not "hidden in a maze of fine print." These factors, considered by the court in Smith, result in the conclusion that this is not a contract of adhesion.